## OGLESBY v. ATTRILL.

1. Where the action of a corporation is lawful, the motives therefor, or the expediency thereof, is not a subject of judicial inquiry.
2. A compromise, as the term is defined by the code of Louisiana, is as binding on the interested parties as a judgment, and cannot be collaterally assailed.

ERROR to the Circuit Court of the United States for the District) of Louisiana.

The petition of the plaintiff alleges that he had become the sole owner of all the capital stock of the Crescent City Gas-Light Company, a corporation created by an act of the legislature of Louisiana, approved April 20, 1870; that the stock was divided into 30,000 shares, of $100 each; that, in March, 1875, he entered into negotiations with the New Orleans Gas-Light Company, another corporation created under the laws of that State, for an amalgamation of the two companies, pursuant to an act of the legislature of the previous year; that the negotiations resulted in an agreement for amalgamation between the two companies, through their responsible boards of directors; that the agreement was ratified by the requisite number of stockholders on the 9th of April following; that on the ensuing day the agreement was deposited with the secretary of state, as required by law; that, under the agreement, the consolidated company retained the name of the New Orleans Gas-Light Company, and its full-paid stock was divided into 37,500 shares, of $100 each, — of which 12,500 shares were allotted to the plaintiff as owner of all the stock of the Crescent City Gas-Light Company, and the residue, 25,000 shares, were allotted to the owners of the stock of the original New Orleans Gas-Light Company.

The petition further alleges that on the 10th of April, 1875, about the time of the consummation of the agreement of consolidation, the defendants Oglesby and Cassard, the former representing himself as entitled to 3,550 shares, and the latter to 1,150 shares, of the stock of the Crescent City Gas-Light Company, united with one Hernandez in a letter addressed to the president of the New Orleans Gas-Light Company, which was as follows: —

"NEW ORLEANS, April 10th, 1875.

"JAMES JACKSON, *President Gas Company.*

"By the newspapers we noticed that you are about to make an adjustment of your contest with the Crescent City Gas Company. We, the undersigned, hereby notify you that, at the commencement of the litigation with your company, we were the owners of the shares in the Crescent City Gas Company attached to our undersigned names; that we were defrauded of said stock by the fraud and machinations of the officers of said company; and that we intend to prosecute our claim to the same, and hereby notify you that any compromise or adjustment you may make with the said Crescent City Gas Company will be subject to our rights, to the extent above stated, and that legal proceedings will be instituted to enforce our said rights.

"J. H. OGLESBY, 3,550 shares.
"JULES CASSARD, 1,150     do.
"J. HERNANDEZ, 400.       do."

The petition avers that this letter was written with the malicious intent to embarrass the plaintiff in the exercise of his rights under the agreement to consolidate; that the claim made was groundless; that, on the 7th of April, 1873, the directors of the Crescent City Gas-Light Company had levied an assessment on the stock of the company of one and one-half per cent; and, under it, the defendant Oglesby was bound to pay $6,075, as owner of 4,050 shares, and the defendant Cassard was bound to pay $1,725, as owner of 1,150 shares; that they refused to pay this assessment, and on the 6th of May, 1873, instituted suit in conjunction with other shareholders to enjoin the directors from proceeding to enforce its payment, and set up as grounds therefor "frauds and machinations of the officers of the said company;" that, on the 14th of that month, the company brought suits against Oglesby and Cassard to enforce payment of the assessment; and that, on the following day, May 15, Cassard transferred his shares to one Phipps, and on the 22d of the month Oglesby transferred to him 3,550 shares of his stock and disposed of the residue to other parties; that these transfers were made in settlement and compromise of the rights of the respective parties, in pursuance of which an indorsement was made on them to the effect that the company

assented thereto, although only fifty cents per share had been paid, and released Oglesby and Cassard from all past, present, and future assessments thereon; and that thereupon the respective suits were dismissed, those by the company against Cassard and Oglesby; and the one by them against the company.

The petition further avers that the notification above mentioned has operated to impair the absolute control of the plaintiff of a large amount of stock in the consolidated company; and that the claim set up by the defendants throws a cloud over the title of a large portion of the shares allotted to him, and, from the nature of the claim, causes a confusion which impairs and depreciates the value of the entire number of his shares to his damage of $200,000. He, therefore, prays that the defendants may be severally cited, and, after due proceedings, be condemned *in solido* to pay to him that sum, with interest and costs.

The petition was filed in the Fourth District Court of the Parish of Orleans, of Louisiana, but, on application of the defendants, was removed to the Circuit Court of the United States. They then filed an answer, and a petition in reconvention, making what is termed a reconventional demand or counterclaim. The substance of this petition is, that the assessment levied upon the stock of the Crescent City Gas-Light Company was unnecessary; that the directors of the company had made no arrangement to purchase property or to build gas-works, or to lay pipes for gas, and had no serious design of doing so; that the charter of the New Orleans Gas-Light Company of 1835 contained a provision authorizing a sale of its gas-works to the city of New Orleans; and that the defendants and other corporators of the Crescent City Gas-Light Company "had in contemplation an arrangement so beneficial to the city of New Orleans that they had no doubt they would be able to buy from it the pipes, gas-works, and other property" which it might thus acquire, and that it was the design and object of the corporators to wait "until time should develop whether they could purchase from the city of New Orleans or should be compelled to build for themselves;" that the directors were put into office through the influence of

the plaintiff, and were completely under his control; that the assessment levied was instigated by him to induce the stockholders to part with their stock, and to enable him to purchase it for a mere nominal sum; that the plaintiff and the directors confederated together to make the assessment to carry out this scheme, although they agreed among themselves that no assessment of their stock should be made; and that they used the process of the courts to compel the defendants to submit to their arbitrary and unnecessary exactions.

The defendants admit that suits were brought against them to enforce the payment of the assessment levied on the shares held by them, and that they made the compromise stated in the petition; but allege that inasmuch as the assessment levied, and others threatened, involved the payment of enormous sums, and inasmuch as they had reason to believe that neither of them would derive any benefit therefrom, they were compelled to make the compromise to prevent their ruin; and that the agreement to surrender their stock in consideration of being released from liability for the assessment, and the dismissal of the suits against them, were made in ignorance of the fact that Phipps, to whom they transferred their stock, was an agent of the plaintiff to combine with the other directors to compel the stockholders to sacrifice their stock; and that they did not know at the time, nor until within six months past, of the conspiracy between the plaintiff and the other directors as above charged, and but for "said error of fact" they would have defended the suits brought against them, and would not have surrendered their stock; and that they have ascertained within six months that the plaintiff and other capitalists at the North had furnished Phipps and others with the means to buy up the stock so soon as it could be forced on the market by the proceedings of the directors.

The defendants then allege that each share of the Crescent City Gas-Light Company is worth not less than $100; that they are severally entitled to the stock which they respectively owned as mentioned; that they were illegally and cunningly deprived of it by the plaintiff, who has converted it to his own use; and that he is accountable to each of them for its value, namely, to the defendant Oglesby for $355,000, and to the de-

fendant Cassard for $115,000; and to pay said amounts they pray that he may be condemned.

To this reconventional demand the plaintiff excepted, on the ground that it was prescribed by one year, and also on the ground that it disclosed no cause of action against the plaintiff. The court overruled the exceptions, and the case was tried by a jury, who found against the claim of the plaintiff and that the reconventional demand should be dismissed. The case comes here on a writ of error taken by the defendants. The plaintiff abides by the judgment entered on the verdict.

*Mr. Richard De Gray* and *Mr. Henry Kelly*, with whom were *Mr. Charles B. Singleton* and *Mr. Richard H. Browne*, for the plaintiffs in error.

*Mr. Thomas J. Semmes* and *Mr. S. Teakle Wallis* for the defendant in error.

MR. JUSTICE FIELD, after stating the case, delivered the opinion of the court.

We do not deem it necessary to consider the rulings of the court upon the admission of evidence, nor the instructions given to the jury, nor those refused. The affirmance of the judgment may be rested on the compromise made between the defendants — the petitioners in reconvention — and the company, assuming that in its absence the petition in reconvention discloses a cause of action against the plaintiff below. They allege that a fraud was practised on them by the directors of the company at his instigation; that he joined in a conspiracy to get possession of their stock at a nominal price; and that in order to carry out this scheme an assessment was levied which was unnecessary for any immediate purpose of the company, and that others were threatened. But they do not allege that the assessment was in excess of the powers of the directors, nor that it would have been unnecessary if the company had intended at the time to purchase or build gas-works required for its business, or to raise money for other corporate purposes; but that under the circumstances then existing it would have been good policy to wait for future proceedings on the part of the city of New Orleans. As to the wisdom of an assessment, or its necessity at the time, or the motives which prompt it,

the courts will not inquire, if it be within the legitimate authority of the directors to levy it, and the objects for which the company was incorporated would justify the expenditure of the money to be raised. They will not examine into the affairs of a corporation to determine the expediency of its action, or the motives for it, when the action itself is lawful. *Bailey* v. *Birkenhead, Lancashire, & Cheshire Junction Railway Co.,* 12 Beav. 433.

The supposed fraudulent intentions of the officers in levying the assessment, which are now alleged as grounds for treating it as invalid, were urged by the defendants as reasons for enjoining its enforcement in the suit they instituted; and any claims arising from that clause were covered by the compromise admitted in the pleadings. A compromise, by the code of Louisiana, is defined to be "an agreement between two or more persons, who, for promoting or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which any one of them prefers to the hope of gaining balanced by the danger of losing" (art. 3071); and has, between the interested parties, a force equal to the authority of a thing adjudged. It cannot be attacked on account of any error in law or any lesion. Art. 3075.

The suits between the defendants and the Crescent City company involved the validity of the assessment which they, on account "of frauds and machinations of the officers," sought to enjoin, whilst the company sought to enforce its payment. The compromise concluded embraced the dismissal of the several suits, — of those brought against the defendants, and the one brought by them against the company, — the transfer of their stock, and their release from present and future assessments thereon. There is no averment that it was induced by any false representations of the plaintiff or of the directors, or that the assessment was not a genuine one, or that the agreement of the directors that no assessment should be levied on their stock was carried into effect; or that there was any concealment of the affairs of the company; and of the value of the stock the defendants were as competent to judge as any others in the market. Their ignorance that its purchase by Phipps was made for the plaintiff does not in any respect affect the

character of the transaction. It was of no moment to them who became the purchaser, nor did they so regard it, for the transfers of their stock were made in blank. The compromise stands, therefore, as a judgment, making a settlement of the very matters now set up as grounds of complaint in the petition in reconvention ; that is, " the frauds and machinations of the officers of the company " in levying the assessment. It settled all claims arising from the assessment, and the alleged fraudulent purposes of the officers in connection with it. Though made directly between the company and the defendants, it protects from further suit those who advised, equally with those who levied, the assessment; participants in whatever wrong was committed, if any there were, as well as principals ; abettors as well as doers of it. No allegations of fraud, in addition to those made at the settlement, can prevent the compromise from having effect as a judgment thereon. It may, indeed, by a direct proceeding instituted for that purpose, be rescinded for fraud, but it cannot, any more than any other judgment, be attacked collaterally. *Adle* v. *Prudhomme*, 16 La. Ann. 343. In the face of the compromise, the reconventional demand cannot be sustained.

*Judgment affirmed.*