THE CAR TRUST INV. CO. v. METROPOLITAN TRUST CO. OF NEW YORK.

(Circuit Court of Appeals, Second Circuit.    January 9, 1911.)

No. 120.

1. CORPORATIONS (§ 89*)—STOCKHOLDERS—CALLS ON UNPAID STOCK.

In the absence of fraud the courts cannot review the action of a corporation, taken in accordance with its charter, in ordering an assessment on its unpaid stock.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 368, 369; Dec. Dig. § 89.*]

2. CORPORATIONS (§ 89*)—STOCKHOLDERS—LIABILITY FOR CALLS ON UNPAID STOCK—ENGLISH COMPANIES ACTS.

The English Companies Act 1862, § 161, provides that the liquidators of a limited company being voluntarily wound up may, when authorized by a special resolution of the company, on a transfer of all or a part of its business or property to another company, receive in full or part payment therefor shares in the purchasing company to be distributed among the members of the selling company, and that such arrangement shall be binding on the members of the company being wound up, subject to the right of any dissenting member by giving written notice to the liquidators within seven days after the passage of such special resolution to require them to purchase his shares at a price to be determined as therein provided. Companies Act 1879, § 5, provides that a limited company by special resolution may declare that any portion of its capital not already called up shall not be capable of being called up except in the event of and for the purpose of the company being wound up, and thereupon it shall not be capable of being called up except in such event and for such purpose. *Held*, that the two provisions must be construed together, and that so construed a company which had appointed liquidators who by authority conferred by special resolution had contracted to sell all the property to a new company, taking shares of the purchaser in part payment, had authority to make a call on its unpaid stock for the payment of a portion of its indebtedness although it had passed the resolution provided for in the act of 1879 and that the fact that the company was not insolvent was not a defense to an action to recover such call from a shareholder who had not given the required notice of dissent, the presumption being, in the absence of any charge of fraud, that the arrangement made for the sale of the property was for the best interest of the shareholders.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 89.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Error to the Circuit Court of the United States for the Southern District of New York.

Action by the Car Trust Investment Company against the Metropolitan Trust Company of the City of New York. Judgment for defendant, and plaintiff brings error. Reversed.

Sullivan & Cromwell (E. B. Hill, of counsel), for plaintiff in error.

Parsons, Closson & McIlvaine (Herbert Parsons, of counsel), for defendant in error.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

WARD, Circuit Judge. The plaintiff was incorporated July 27, 1888, under the English Companies Acts 1862 to 1886, having a capital of £1,000,000 divided into 50,000 preference shares of £10 each, all issues full paid, and 50,000 ordinary shares of £10 each, all issued, only £2 10s. paid. The plaintiff's indebtedness at the times under consideration was substantially £470,000 of debentures. The defendant trust company is a corporation of the state of New York into which was duly merged another trust company of the same state, called the Atlantic Trust Company, and is the owner and holder of 2,856 of the plaintiff's ordinary shares standing on the plaintiff's books in the name of the Atlantic Trust Company. In accordance with section 5 of the Companies Act of 1879, the plaintiff by a special resolution of shareholders passed at an extraordinary general meeting April 16, 1891, and confirmed at a like meeting May 14, 1891, provided that the unpaid balance of capital could only be called "in event of and for the purpose of the company being wound up." These words are taken from section 5 which reads as follows:

"A limited company may by a special resolution declare that any portion of its capital which has not been already called up shall not be capable of being called up, except in the event of and for the purpose of the company being wound up; and thereupon such portion of capital shall not be capable of being called up, except in the event of and for the purposes of the company being wound up."

The amount due on the ordinary shares could not be charged by the plaintiff, nor transferred to another company, nor called for use in the plaintiff's business as a going concern, nor for any purpose other than winding the plaintiff up. Stanley's Case, 4 D. J. & S. 407; In re Streathan & Co., 1 Chan. Div. (1897) 15; In re Mayfair Property Co., Law Rep. 2 Chan. Div. (1898) 28. June 7, 1905, extraordinary resolutions were adopted at separate meetings of the ordinary and preferred shareholders for the appointment of liquidators and the winding up of the company, in accordance with a scheme of arrangement agreed upon. November 3, 1905, the plaintiff, in pursuance of said resolutions and to carry out the scheme of arrangement, entered into an agreement with a purchasing company organized for the purpose, whereby the plaintiff agreed to transfer all of its property except uncalled capital and enough assets together with a call of £2 10s. on the ordinary shares to raise £230,000 for the purpose of paying £220,-000 of the plaintiff's debentures, its other debts and the expenses of the proceeding. The purchasing company agreed to pay the balance

of the debentures amounting to £250,000, and to give £12 5s. of its income bonds and 5s. of its ordinary shares full paid for every preferred share of £10 and £10 par of income bonds and 5s. of ordinary shares full paid for every £10 paid on the ordinary shares.   December 11, 1905, resolutions were passed at an extraordinary general meeting confirmed at a like meeting held December 28th requiring the plaintiff to be voluntarily wound up, appointing liquidators and directing them to make a call of £2 10s. on the ordinary shares.   January 13, 1906, the liquidators notified the Atlantic Trust Company in writing that they would on January 31st settle the list of contributories including it as holder of 2,856 ordinary shares, unless cause were shown to the contrary.   January 31, 1906, the liquidators notified the Atlantic Trust Company that the list had been so settled and called upon it to pay £2 10s. per share in certain specified installments running through the year 1906.   May 23, 1907, the defendant having made no payments, this action was brought to recover the amount of the call with interest, $34,746.81.   The defense mainly relied on is that the call of £2 10s. was not necessary to pay the plaintiff's debts.   The contention of the defendant is, and the view of the court below evidently was, that if the plaintiff's assets were sufficient to pay its debts they must be so applied.

Section 161 of the Companies Act (1862) is as follows:

"161. Where any company is proposed to be or is in the course of being wound up altogether voluntarily, and the whole or a portion of its business or property is proposed to be transferred or sold to another company, the liquidators of the first-mentioned company may, with the sanction of a special resolution of the company by whom they were appointed, conferring either a general authority on the liquidators, or an authority in respect of any particular arrangement, receive in compensation or part compensation for such transfer or sale shares, policies, or other like interests in such other company, for the purpose of distribution amongst the members of the company being wound up, or may enter into any other agreement whereby the members of the company being wound up may, in lieu of receiving cash, shares, policies, or other like interests, or in addition thereto, participate in the profits of or receive any other benefits from the purchasing company; and any sale made or arrangement entered into by the liquidators in pursuance of this section shall be binding on the members of the company being wound up; subject to this proviso, that if any member of the company being wound up who has not voted in favour of the special resolution passed by the company of which he is a member at either of the meetings held for passing the same expresses his dissent from any such special resolution in writing addressed to the liquidators or one of them, and left at the registered office of the company not later than seven days after the date of the meeting at which such special resolution was passed, such dissentient member may require the liquidators to do one of the following things as the liquidators may prefer; that is to say, either to abstain from carrying such resolution into effect, or to purchase the interest held by such dissentient member at a price to be determined in manner hereinafter mentioned, such purchase-money to be paid before the company is dissolved, and to be raised by the liquidators in such manner as may be determined by special resolution; no special resolution shall be deemed invalid for the purposes of this section by reason that it is passed antecedently to or concurrently with any resolution for winding up the company, or for appointing liquidators; but if an order be made within a year for winding up the company by or subject to the supervision of the court, such resolution shall not be of any validity unless it is sanctioned by the court."

Section 5 of the act of 1879, supra, is to be read in connection with the above section of the act of 1862. It will be noticed that the latter does not confine the winding up to the realization of assets by sale, but when the whole or a portion of the business and property is sold to another company, authorizes the liquidators, with the sanction of a special resolution, to exchange the securities of the company being wound up for those of the purchasing company in lieu of cash. A way is provided in which dissentient shareholders may recover the value of their shares instead of taking securities. Conceding that the assets were sufficient to pay the plaintiff's debts, we discover nothing in the contract of November 3, 1905, inconsistent with the provisions of section 161 of the Companies Act of 1862, or section 5 of the Companies Act of 1879. Under the former the plaintiff had the right to wind up by disposing of its property to a new company in exchange for the new company's securities and by the latter to make calls of unpaid capital for the purpose of winding up. The plaintiff is being wound up under the arrangement agreed upon, and the call on the ordinary shares was necessary to carry the arrangement out. Under it the plaintiff's assets could be nursed and prevented from sacrifice, and as all the new company's securities except what were necessary to pay the plaintiff's indebtedness were to go to the plaintiff's shareholders without liability for further calls, it may well have been better for all concerned to take these securities than to sell the assets and pay the plaintiff's debts.

The defendant did not take steps as a dissentient shareholder to prevent the execution of the scheme unless the value of its shares, if they had any value, were first ascertained and paid in the manner provided for in section 161 of the act of 1862. The shareholders and the liquidators having resolved upon winding up in the manner proposed and upon the call on the ordinary shares for the purpose of doing so, the Circuit Court was not required, nor indeed in a position, to determine the contrary. Oglesby v. Attrill, 105 U. S. 605, 609, 26 L. Ed. 1186. Mr. Justice Brown, in Nashua Savings Bank v. Anglo-American Co., 189 U. S. 222, 230, 23 Sup. Ct. 518 (47 L. Ed. 782), said:

"In the absence of fraud the necessity for an assessment upon the capital stock cannot be made the subject of inquiry by the courts. As was said by Mr. Justice Field in Oglesby v. Attrill, 105 U. S. 605, 609 [26 L. Ed. 1186]: 'As to the wisdom of an assessment, of its necessity at the time, or the motives which prompt it, the courts will not inquire, if it be within the legitimate authority of the directors to levy it, and the objects for which the company was incorporated would justify the expenditure of the money to be raised. They will not examine into the affairs of a corporation to determine the expediency of its action, or the motives for it, when the action itself is lawful.' Bailey v. Birkenhead, etc., Railway Co., 12 Beav. 433. See, also, Cook on Stockholders, § 113; Great Western Telegraph Co. v. Purdy, 162 U. S. 329 [16 Sup. Ct. 810, 40 L. Ed. 986]. Whether such assessment could be impeached by showing that the corporation was not a bona fide enterprise, or had never actually engaged in business, or become a going concern, or that the assessment was made unnecessarily and in bad faith, or that a discrimination was made against foreign stockholders, it is unnecessary to determine, since no evidence to that effect was offered on behalf of the defendant. Certainly, under the cases above cited, it would be unnecessary in order to make a prima facie case to negative these facts. There is a presumption of good faith attaching as well to foreign as to domestic corporations."

In the absence of fraud, and none is alleged, we must presume that the contract of November 3d was the best way, in the interest of all concerned, to wind the plaintiff up and the call upon the ordinary shares was necessary to carry it out. If fraud were alleged, the defendant might have relief in equity, but not in an action at law in the federal courts, where jurisdiction at law and in equity is kept entirely distinct. Goodyear v. Dancel, 119 Fed. 692, 56 C. C. A. 300.

If, as in Clinch v. Financial Corporation, L. R. 5 Eq. 450, or in Re Hester & Co., Ltd., 44 L. J. Rep. N. S. Pt. 1 Eq. 757, or in Bank of China v. Morse, 168 N. Y. 459, 61 N. E. 774, 56 L. R. A. 139, 85 Am. St. Rep. 676, the call had been not for the purpose of paying the debts of the selling company nor for the benefit of its shareholders, but for the benefit of the purchasing company, or if the securities of the purchasing company were subject to call when the securities of the selling company were not, as in Bisgood v. Henderson's Transvaal Estates, Ltd., 1 Ch. Div. (1908) 743, the defendant would be under no obligation to pay.

Other defenses are but faintly pressed, and we think them without merit. Judgment reversed.