BRUNOT,- J.
 

 This is a suit for the recovery of $93,465.04 alleged to be due by the defendant to the plaintiff corporation for cash advanced by plaintiff to him, as appears by an itemized account of the indebtedness, made by an employee of Barrow, Wade, Guthrie & Co., certified public accountants of New York, which is annexed to and made part of the petition. The petition does not allege fraud, error, or duress.
 

 ■ The defendant being a nonresident, an attachment issued, and a curator was appointed to represent the absentee. The curator filed an answer to the suit, which was, in effect, a general denial. This answer was subsequently withdrawn, and the curator filed, as a substitute, an answer in which he alleges that a resolution was passed by the board of directors of the plaintiff corporation relieving the defendant of all of his indebtedness
 
 *1088
 
 to the plaintiff corporation in consideration of the transfer to it of certain properties in Oklahoma; that, pursuant to this resolution, the properties were transferred; and that, in a contract between the plaintiff corporation and the Southern Crude Oil Purchasing Company and the Angelina Petroleum Company, the defendant was expressly released from any liability to the plaintiff corporation which may have existed at that time.
 

 The defendant then personally appeared, adopting the answer of the curator appointed to represent him, except as to paragraph '5 of the answer, which he changed to read that the properties in Oklahoma were in the name of J. W. Whitney, trustee, and Edwin S. Booth. The defendant thereafter further amended paragraph 5 of the answer by adding the following thereto, viz.:
 

 “He shows that an oral agreement was entered into by and between the plaintiff corporation and defendant, whereby the said corporation agreed to cancel the indebtedness, if any, of the said W. R. Davis to the said corporation; that in accordance with the tentative arrangement made with the corporation by the said W. R. Davis, the said corporation passed the resolution quoted in Article Four of this answer; that, pursuant to the agreement, which was oral, the same was duly executed, as was contemplated by the resolution previously quoted; and the said W. R. 'Davis caused to be transferred by E. S. Booth and J. W. Whitney, trustee, to G. L. Reynolds, certain properties more fully described in two assignments, which are attached hereto and made a part hereof; that the said transfers to the said G..L. Reynolds inured to the benefit of the plaintiff corporation, which benefit was accepted by it in its settlement with the Southern Crude Oil Purchasing Company and was a part of the consideration of the contract entered into by the said Southern Crude Oil Purchasing Company, the Angelina Oil Company and the plaintiff corporation on or about September 1, 1926, a copy of which is attached hereto and made a part hereof; that, the Southern Crude Oil Purchasing Company gave credit to the plaintiff corporation and to its subsidiary, the Angelina Oil Company, in the amount of Six Thousand and Forty-two and 53/100 ($6,042.-53) Dollars by virtue of the transfer by this defendant to the said G. L. Reynolds of the leases in question.”
 

 The case was tried, and, from a judgment condemning the defendant to pay to the plaintiff $83,465.04, with legal interest thereon from October 8, 1927, until paid, and maintaining the writ of attachment, the defendant appealed.
 

 On May 18, 1925, the board of directors of the plaintiff company adopted the following resolution:
 

 “Resolved that this corporation agree, and it does hereby agree, to assume, take over and pay all indebtedness, if any, owed by W. R. Davis to the Crusader Oil Company and or Crusader Pipe Line Company, if there be such indebtedness, and
 

 “Be it further resolved that this assumption of indebtedness is in addition to the indebtedness assumed by this Company as contained in minutes of the special meeting of the Board of Directors of this Company of date September 27th, 1924, and,
 

 “Be it Further Resolved that the Treasurer of this Company be and he is hereby authorized and empowered to show on the books of the company that all indebtedness, if any, owed to this company by W. R. Davis to be fully paid, canceled, discharged and released, in consideration of the transfer of Oklahoma properties aforesaid.”
 

 The defendant contends that the plaintiff is bound by the quoted resolution, and that
 
 *1090
 
 the release cannot be collaterally attacked. In support of this contention he cites Bosio v. Picton, 106 La. 248, 30 So. 699; Russ v. Union Oil Co., 113 La. 196, 36 So. 937; Adle v. Prudhomme, 16 La. Ann. 343; Turregano v. Barnett, 127 La. 620, 53 So. 884; Massey v. W. R. Pickering Lumber Co., 136 La. 688, 67 So. 552; Civ. Code, arts. 3071, 3078, 3080; Oglesby v. Attrill, 105 U. S. 605, 26 L. Ed. 1186.
 

 In connection herewith we quote two paragraphs from a contract dated September 1, . 1926, between the Southern Crude Oil Purchasing Company (successor to the Crusader Oil Company), the Southern Pipe Line Company (successor to Crusader Pipe Line Company), and the Crusader Oil Producing Company, the plaintiff in this suit, to wit:
 

 “Fifth: The parties further declare that for the consideration aforesaid, they do, respectively, waive, relinquish and renounce any and all claims they may have against each other growing out of that certain contract made and entered into by and between the Crusader Oil Producing Company and W. R. Davis, on the. one part, and the Crusader Oil Company and the Crusader Pipe Line Company, on the other part, of date May 1st, 1925 (to which contract reference is made), including any and all claims the Crusader Oil Company, now Southern Crude Oil Purchasing Company, and the Crusader Pipe Line Company, now Southern Pipe Line Company, may have against TV. R. Davis.
 

 “Sixth: This contract shall be intended and construed as a full and final compromise and adjustment of all controversies between the respective parties, and shall have the force and effect of the thing adjudged.”
 

 Paragraph 13 of the contract dated May 1. 1925, to which reference is made in paragraph 5 of the contract of September 1,1926, quoted supra, is as follows:
 

 “It is understood by and between the parties hereto that this contract and the conveyance and assignment to be executed herewith as' above set forth, shall operate as a full and final settlement and compromise of any and all claims held by the Producing Company and Davis against the Pipe Line Company, the Oil Company and the British American Petroleum Company, Ltd., and all claims of the said corporations against Davis and the Producing Company, and against the officers of the Producing Company; it being understood that all such claims, obligations and liabilities, except as herein otherwise provided, are waived, released, renounced and remitted.”
 

 It is shown by paragraph 13 of the contract between the plaintiff and the defendant, on the one part, and the Crusader Oil Company and the Crusader Pipe Line Company, on the other part, dated May 1, 1925, by the resolution adopted by the board of directors of the plaintiff company on May 18, 1925, and by paragraphs 5 and 6 of the contract between the Southern Crude Oil Purchasing Company and the plaintiff company, dated September 1, 1926, quoted supra, that all indebtedness of W. R. Davis to any and all of the companies named was compromised, canceled and remitted, as consideration for the transfer by W. R. Davis to the plaintiff company of the Oklahoma properties.
 

 . It is shown, by the testimony of Mr. Austin B. Taylor, the attorney who represented the several named companies in all these transactions, that the Oklahoma properties were transferred by W. R. Davis, through Judge Booth and Mr. Whitney, who held those properties as the agents and trustees of W. R. Davis, to plaintiff’s nominee, Mr. Reynolds. It is shown that the transfer of the Oklahoma properties to Mr. Reynolds, plaintiff’s nominee, was deferred, after the agreements
 
 *1092
 
 were reached from which we have quoted supra, until certain claims and charges, for which the Oklahoma properties were liable, were paid. It is shown that the account sued upon was not obtained from an audit of the books of the Orusader Oil Producing Company, but from the accountant’s ¡adjustment of those books by transposing a number of debits and credits shown thereon, by disallowing certain credits, and by reducing others. Mr. Robert J. Cawley, the accountant who made the audit, testified that he had not kept the books; that he had no knowledge concerning the adjustments he made therein except from information received from sources he does not recall. When the audit this witness had made was offered as evidence, the following objection to the offering was made:
 

 “Objected to by counsel for defendant, on the ground and for the reason that the books and records from which that memorandum was taken, is the best evidence of what they contain, that the question elicits merely an opinion and conclusion of the witness, and for the further reason that the statement offered, or concerning which, the examination is made does not purport to be an extract from the books, but purports to be an extract of his own conclusion and is not a complete copy of the books themselves.”
 

 Counsel’s objection was overruled, and the usual exception thereto was noted in lieu of a formal bill of exceptions. We think this ruling was erroneous. A purported audit of a set of books which is, admittedly, not a true abstract from the books audited, should not be received in evidence, if timely objection thereto be made. Counsel for defendant also objected to any parol testimony as to the contents of the books or the findings of the auditor. The court did not rule upon-this objection, but said:
 

 “The' objection is made general and applicable to all testimony of a similar character and the Court will hold the case open for the introduction of the books when they get here.”
 

 Before the case was closed, a trunk containing the boobs of the plaintiff corporation was delivered at the courthouse, whereupon the following occurred:
 

 “By Mr. O’Quin. Your Honor, we offer in evidence, all of the books of the corporation, from which Mr. Cawley compiled his account.
 

 “By Mr. Cook. Your Honor, we object to their being offered in globo.
 

 “By the Court. The objection is sustained. * * * ”
 

 “By Mr. O’Quin. Your Honor, I would like for the record to show that the Plaintiff has now, in Court, the books of the corporation.”
 

 We have found that the purported audit of the books made by Mr. Cawley was improperly admitted in evidence, and, for the same reason that it must be excluded, Mr. Cawley’s testimony relating to it, and to the adjustments of the debits and credits shown on the books which he made, and which are reflected by the audit, should also have been excluded.
 

 Having reached the conclusion that the audit, from which the account sued upon was taken, and the oi;al testimony to support that audit, were improperly admitted in evidence, and finding that the court excluded from the evidence the books of the plaintiff corporation, because they were merely offered in globo, the ’ plaintiff’s demand necessarily must fall, for nothing remains in the record upon which to base a judgment in plaintiff’s-favor. Under the circumstances of this case, ■ we think the plaintiff should be non-suited. Eor these- reasons the judgment ap~
 
 *1094
 
 pealed from is avoided, and it is decreed that plaintiff’s suit be dismissed as in case of nonsuit. Appellee to pay the costs of the appeal.
 

 O’NIELL, O. J., dissents.