Mary ALBRIGHT, Administratrix of the Estate of Charles Albright, Deceased, Plaintiff,

v.

R. J. REYNOLDS TOBACCO COMPANY, a corporation, Defendant.

Civ. A. No. 65–1155.

United States District Court, W. D. Pennsylvania.

Oct. 23, 1972.

Kenneth W. Behrend and Mark B. Aronson, Pittsburgh, Pa., for plaintiff.

Harold R. Schmidt and Raymond G. Hasley, Pittsburgh, Pa., Edwin J. Jacobs, Alfred E. Schretter, New York City, for defendant.

## OPINION

WEBER, District Judge.

I

Defendant has moved for Summary Judgment on the grounds that Plaintiff has secured prior satisfaction for the same injury claimed here.

On July 5, 1962, Plaintiff's decedent brought suit against the City of Pittsburgh for injuries received when his automobile struck a street excavation. The complaint alleged contusions and blows to the chest, contusions to the abdomen, shock, sprain of the left wrist, traumatic neurosis, pain, suffering and medical expenses. On August 6, 1962 the Defendant served interrogatories to determine the extent of the injuries and damages claimed. These answers were not filed until July 10, 1964. It is necessary for the purpose of this motion that we set forth certain of those Interrogatories and their Answers in full.

"Interrogatory Number 15. "State the exact name and address of each hospital or institution at which you received treatment on account of the injuries complained of in your complaint; and with respect to each, state:

(a) the nature of the treatment received,

(b) the date or dates on or between which you were confined, . . ."

Answer: "Plaintiff was treated for cancer which may have been caused or exacerbated by the said accident at Montefiore Hospital.

15(a). Plaintiff had the upper lobe of his lung removed, and attendant treatment performed at Montefiore Hospital, Pittsburgh, Pennsyvania.

(b) Said treatment was rendered from November 29, 1963 to December 28, 1963."

Interrogatory Number 17. "What are the amounts of the bills of each of those persons listed in answer to Interrogatory 13 for the services they rendered in connection with the injuries mentioned?"

Answer: "Montefiore Hospital—$1,429.50 to date . . .".

Interrogatory Number 23. "State whether or not any of the alleged injuries resulted in any scars, abrasions, contusions or lacerations to your body. If so, describe and specify the parts of your body."

Answer: "Plaintiff suffered contusions and blows of the chest, contusions of the abdomen, and severe shock, sprain of the left wrist and possible traumatic neurosis and possible internal injuries including possible exacerbation or causation of a cancerous growth in the lungs."

Interrogatory Number 24: "State specifically the nature and duration of the pain, suffering and inconvenience which you allegedly underwent and which you will continue to undergo as stated in your complaint in trespass."

Answer: "Plaintiff suffers a continuous pain in the chest which continues to prevail to the present time. . . . .".

Interrogatory Number 26: "State the degree of any disability to any part or parts of your body which you claim resulted from the alleged accident. State whether such disability is claimed to be temporary or permanent in each case."

Answer: "Loss of part of the lungs, inability to sleep well and shortness of breath may be permanent results of the accident."

Interrogatory Number 33. "Subsequent to the accident alleged in the complaint, were you disabled partially or totally from any other cause? . . .".

Answer "Plaintiff believes not."

The plaintiff in the above-cited action died on November 13, 1965, and his widow, the plaintiff in the present action, was substituted as plaintiff in his stead.

After Pretrial Conferences looking toward conciliation in the Common Pleas Court, the above action was settled and plaintiff's counsel (the same counsel as represents the plaintiff in the within action) marked the docket "Settled and Discontinued" on December 22, 1967. The consideration of $850 was paid the plaintiff for the settlement.

During his lifetime, and while the above-cited Common Pleas action was pending, Charles Albright commenced the present action against the defendant R. J. Reynolds Tobacco Company alleging that the cancer of the lung which he developed was caused by smoking Camel cigarettes made by the defendant. Charles Albright died after this suit was filed and his administratrix was substituted as plaintiff.

The defendant has moved for Summary Judgment on the grounds that the prior action against the City of Pittsburgh and the settlement thereof bars this action.

This is a diversity suit and the court must apply Pennsylvania law. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 [1938].

While plaintiff's complaint against the City of Pittsburgh only alleged "contusions and blows to the chest", when the defendant sought the particulars of the claim the plaintiff supplied many of the same elements of damages that are now being asserted in the present suit. It is apparent that the City of Pittsburgh was being informed that it faced a possible claim that among the consequences of plaintiff's injuries was the development of a cancer of the lung. It is noted that in answer to Interrogatory Number 17 plaintiff claimed medi-

cal bills of $1,429.50 due the Montefiore Hospital where he underwent surgery for the lung cancer, and the same bill is being presented by plaintiff in the present action against R. J. Reynolds Tobacco Company.

A claim for cancer resulting from a single traumatic impact has been sustained in the Pennsylvania courts. Menarde v. Phila. Transp. Co., 376 Pa. 497, 103 A.2d 681 [1954]. The complaint in the case against the City of Pittsburgh was broad enough to include a claim for cancer arising from the alleged "contusions and blows to the chest". Matthews v. Spiegel, 385 Pa. 203, 122 A.2d 696 [1956] Nark v. Horton Motor Lines, Inc., 331 Pa. 550, 1 A.2d 655 [1938].

The controlling principle of law advanced by the defendant is that stated in Sections 885(1) and 886 of the Restatement, Torts:

§ 885.

"(1) A valid release of one tortfeasor from liability for a harm, given by the injured person, discharges all others liable for the same harm, unless the parties to the release agree that the release shall not discharge the others and, if the release is embodied in a document, unless such agreement appears in the document."

\* \* \* \* \* \*

§ 886.

"The discharge or satisfaction of a judgment against one of several persons each of whom is liable for a single harm discharges each of the others from liability therefor."

While the Restatement speaks in terms of release or satisfaction of judgment, the Pennsylvania cases treat the marking of the docket "settled and discontinued" as having the same effect. Sustrik v. Jones & Laughlin Steel Corporation, 413 Pa. 324, 197 A.2d 44, 46 [1964].

"The present claim in so far as it involves the recovery of damages for the removal of the coal and damage to the buildings on plaintiffs' land is barred by the *settlement and discontinuance* of the 1957 action. As between the parties involved, the settlement and discontinuance had the same effect as the entry of a judgment for the defendant in the proceedings. As between the parties to the action, it is conclusive as to the cause of action asserted therein: Baumgartner v. Whinney, 156 Pa.Super. 167, 39 A.2d 738 [1944]; Currier v. Bilger, 149 Pa. 109, 24 A. 168 [1892]; Berg v. Cypher, 291 Pa. 276, 139 A. 844 [1927]; Sale v. Ambler, 335 Pa. 165, 6 A.2d 519 [1939].

\* \* \* \* \* \*

The final determination of the 1957 action precludes the plaintiffs from maintaining this suit, even though other grounds for relief are asserted than those presented in the original action. That action was conclusive, not only as to those matters that actually were litigated, *but also of those matters which could have been litigated therein.*" (Emphasis supplied.)

A standard Pennsylvania treatise recites the following effect of "settlement and discontinuance":

"Agreement of Settlement and Discontinuance.—A discontinuance or an agreement to discontinue in the usual form must be distinguished from an agreement to settle and discontinue, or from the marking of an action settled and discontinued, because the latter type of entry not only terminates the action in which the entry is made but ordinarily *it has the effect of being res judicata of the cause of action.* In such case, no subsequent action for the same cause may be brought as long as the discontinuance is outstanding.

In an action to which a counterclaim had been interposed, an order signed by both parties, directing the prothonotary to mark the suit 'settled, discontinued and ended', terminated the counterclaim as well as the original action.

*An agreement to mark an action 'settled, discontinued and ended' is a*

*contract which will be set aside only for want of consideration, lack of authority of an agent, or on the usual equitable grounds."* (Emphasis supplied.) (footnotes omitted.) 5 Standard Pennsylvania Practice, Ch. 21, § 20, pp. 92, 93.

The Pennsylvania courts have long held that an injured party may maintain as many actions as there are joint tort feasors but may obtain but one satisfaction. In Peterson v. Wiggins, 230 Pa. 631, 79 A. 767 [1911], the plaintiff started a suit against one defendant to recover damages for the wrongful death of her husband. That case was then settled for $500 and the record was marked "settled, discontinued, and ended". The plaintiff then brought suit against another defendant, Wiggins. The Supreme Court affirmed judgment for the defendant stating: "Since death happens but once to any individual, the inference—we put it very mildly—is that these several defendants in these several suits were joint tortfeasors." (p. 634, 79 A. p. 768).

In Thompson v. Fox, 326 Pa. 209, 192 A. 107, 109 [1937], the Supreme Court of Pennsylvania stated:

> "Nor is it material whether the tortfeasors involved committed a joint tort or concurrent or successive torts, because the principle which underlies the rule is that the injured person is given a legal remedy only to obtain compensation for the damage done to him, and when that compensation has been received from any of the wrongdoers, his right to further remedy is at an end."

See also Union of Russian Societies of St. Michael & St. George v. Koss, 348 Pa. 574, 36 A.2d 433 [1944], and Girard Trust Corn Exchange Bank v. Reliable Motors, Inc., 176 Pa.Super. 300, 106 A.2d 670 [1954], and Hilbert v. Roth, 395 Pa. 270, 149 A.2d 648 [1959].

The issue presented in this motion for summary judgment is the same as that before Judge Higginbotham in Pillo v. Reading Company, 232 F.Supp.

761 [E.D.Pa.1964]. In that case the plaintiff was injured while cleaning the track of the defendant railroad. He first brought suit in the state courts against the driver of the car which struck him and this driver's employer. He received a judgment which was satisfied. Thereafter, a federal court action was brought against the railroad (plaintiff's own employer) under the Federal Employers' Liability Act (FELA), in which Pillo claimed damages for the same injuries for which he recovered damages in the state court. Defendant railroad moved for summary judgment on the ground that satisfaction of the prior judgment barred recovery in the subsequent suit.

In granting the motion, the court stated at pp. 761–762:

> "It is hornbook law that a satisfied judgment against one co-obligor or joint tortfeasor bars suit against others jointly responsible for the same injury. Sessions v. Johnson, 95 U.S. 347, 24 L.Ed. 596 [1877]; Lovejoy v. Murray, 3 Wall. 1, 70 U.S. 1, 18 L.Ed. 129 [1865]; McPherson v. Amalgamated Sugar Co., 271 F.2d 809 [9th Cir. 1959]; Eberle v. Sinclair Prairie Oil Co., 120 F.2d 746, 135 A.L.R. 1494 [10th Cir. 1941]; Annot., 166 A.L.R. 1099, 1100 [1947]; 52 Am.Jur. Torts § 131 [1944]. This rule is predicated upon the equitable theory of unjust enrichment which forbids greater recovery than the loss or injury sustained. Thus it is said that an injured party may have but one satisfaction. McPherson v. Amalgamated Sugar Co., *supra;* Muise v. Abbott, 60 F.Supp. 561 [D.Mass.1945]; Thompson v. Fox, 326 Pa. 209, 192 A. 107, 112 A.L.R. 550 [1937] (H. Stern, J.).
>
> Against this fundamental rule of damages, plaintiff attempts to draw a distinction between joint tortfeasors and concurrent tortfeasors whose successive acts combine to produce one indivisible injury. The Restatement of Torts does not make such a dis-

tinction and it would be illogical to do so in this case. Section 886 of the Restatement of Torts states that ' * * * satisfaction of a judgment against one of several persons each of whom is liable for a single harm discharges each of the others from liability therefor.' Accord, Restatement, Judgments § 95 [1942]. Absent satisfaction there is no question that the allegations of plaintiff's complaint, if proven, would as a matter of tort law make defendant, the concurrent tortfeasor, liable for the same harm which was sued upon in the state court. Kendrick v. Piper Aircraft Corp., 265 F.2d 482 [3rd Cir. 1959]; Southern Pac. Co. v. Raish, 205 F.2d 389 [9th Cir. 1953]; Chadwick v. Popadick, 390 Pa. 511, 136 A.2d 87 [1957]. If this second action is allowed, therefore, plaintiff would be given the opportunity of receiving double compensation for the same loss —a result contrary to the Restatement rule and the unjust enrichment rationale discussed above. This would be true regardless of whether the relationship between the tortfeasors is joint or concurrent and hence such distinction is without merit. See Viehweg v. Mountain States Tel. & Tel. Co., 141 F.Supp. 848 [E.D.Idaho 1956]; Gentry v. Jett, 173 F.Supp. 722 [W.D. Ark.1959]; aff'd 273 F.2d 388 [8th Cir. 1960]; Willoughby v. Sinclair Oil & Gas Co., 89 F.Supp. 994 [W.D. Okla.1950]; Hilbert v. Roth, 395 Pa. 270, 149 A.2d 648 [1959]; Thompson v. Fox, supra. Cf. Muise v. Abbott, 60 F.Supp. 561 [D.Mass.1945]."

The same result was reached in another jurisdiction applying the same common law rule where a truck driver brought suit against a railroad, recovered and satisfied the judgment, and then brought suit against his employer for the same injuries. Summary judgment was granted and affirmed in Gentry v. Jett, 273 F.2d 388 [8th Cir. 1960].

There were means available to the plaintiff in his settlement against the City of Pittsburgh to reserve the cancer claim which had already been asserted in the suit filed against R. J. Reynolds Tobacco Co. The plaintiff could have given the City of Pittsburgh a joint-tortfeasors' release under Sec. 5 of the Uniform Contribution Among Tort-Feasors Act of 1951, P.L. 1130, 12 P.S. Sec. 2082 et seq. This was not done. If this was not done the common law rule of Thompson v. Fox, supra, still controls, Hilbert v. Roth, supra. In Hilbert the court noted that under the common law of Pennsylvania a plaintiff could bring separate action against several defendants for the same injury, obtain judgment on each, and execute on the most favorable. However;

". . . once he received satisfaction, and either gave a release or satisfied the judgment of record, he could not thereafter execute or bring action against any other defendant . . . The bar to the second suit has been held to apply not only where there was joint negligence, but in any case, whether negligence was joint, concurrent, or successive, in which the prior defendant was liable for the same injury. Thompson v. Fox, 326 Pa. 209, 192 A. 107, 112 A.L.R. 550." 395 Pa. 272, 149 A.2d 650.

The plaintiff in the City of Pittsburgh case might also have amended the complaint and filed supplemental answers to Interrogatories which would clearly remove any claim for the cancer. This was not done. The plaintiff now attempts to argue that the cancer claim was not pressed because the plaintiff was unable to prove a causal connection. In support of this plaintiff presents a report by Dr. Norman Minde who examined the plaintiff on behalf of the City of Pittsburgh and whose opinion stated that he did not find a relationship between the cancer and the injuries suffered in the street accident. However, Dr. Minde was the expert engaged by the City of Pittsburgh, the defendant. We also have opinions filed in the present case by defendant's medical witnesses denying the relationship between plaintiff's cancer and defendant's ciga-

rettes. In any event, during the progress of the suit, plaintiff pressed the injuries from cancer as part of his damages. If plaintiff was persuaded in that case that he could not prove the relationship and therefore accepted the settlement negotiated, he nevertheless released the City of Pittsburgh from all possible consequences of the injuries received. "The action was conclusive, not only as to those matters which were actually litigated, but also as to those matters which could have been litigated therein." Sustrik v. Jones & Laughlin Steel Corp., *supra.*

█▌ Plaintiff asserts several grounds for the invalidity of the settlement with the City of Pittsburgh. She recites that no court approval was obtained. But the record shows settlement after two pretrial conferences with the assigned judge. In any event no court approval is necessary under Pennsylvania law: 20 P.S. §§ 320.513 and 320.602. Arbuckle's Estate, 324 Pa. 501, 188 A. 758 [1936]. Also the settlement and discontinuance is not void, but voidable, and the plaintiff cannot now be heard to set aside the transaction for any defect for which she was responsible. Williamson's Appeal, 94 Pa. 231 [1880]; Spencer v. Jennings, 139 Pa. 198, 21 A. 73, sub nom. Spencer v. Feichtel [1891]; Gibson's Estate, 153 Pa.Super. 413, 34 A.2d 159 [1943].

"If the discontinuance was improperly or illegally entered the defendant should have applied to the court to strike it off. So long as the record of that case shows that the suit has been discontinued, we must, in this action, treat it as having been regularly and legally done." Lindsay v. Dutton, 217 Pa. 148, 149, 66 A. 250, 251 [1907].

█ Plaintiff attempts to introduce parol evidence to alter or contradict the terms of the release. Plaintiff's lawsuit against the City of Pittsburgh and its settlement are contained in the records of the Court of Common Pleas of Allegheny County. We cannot go behind that record to alter its terms. The agreement to settle and discontinue is a contract, Rivers v. Delaware Valley Mutual Casualty Co., 196 Pa.Super. 475, 175 A. 2d 87 [1961], and the parol evidence rule applies. Such settlements are not subject to collateral attack in another proceeding. Oglesby v. Attrill, 105 U.S. 605, 26 L.Ed. 1186 [1882]; A. D. Juilliard & Co. v. Johnson, 259 F.2d 837 [2nd Cir. 1958]; Myers v. Crick, 271 Pa. 399, 114 A. 255 [1921]. Where a case has been settled by consent of the parties and the record so indicates, the record cannot be contradicted. Sherwood v. Yeomans, 98 Pa. 453 [1881]. Where the circumstances indicate a general settlement the release will be given effect according to its terms. Brill's Estate, 337 Pa. 525, 12 A.2d 50 [1940].

█ In passing on a motion for Summary Judgment the court must limit itself to facts which would be admissible in evidence. [Fed.R. of Civ.P. 56(e)]. Plaintiff's counsel wishes to present some evidence of an off-the-record understanding between himself and the counsel for the City of Pittsburgh in the settlement of the City suit. Such evidence would be barred by the parol evidence rule as well as Pennsylvania Rule of Civil Procedure 201, 12 P.S. Appendix, requiring agreements of attorneys affecting lawsuits to be in writing. Appel Vending Co. v. 1601 Corp., 204 Pa.Super. 243, 203 A.2d 812 [1964]. Neither plaintiff's counsel's proferred testimony and the advisory letter of the City Solicitor recommending the settlement, nor the pretrial statement delivered to the City before the settlement, are part of the record of the Court of Common Pleas. None of these are admissible to vary the terms of the settlement as it appears of record. Their probative effect is equivocal. They do not establish that the cancer claim was withdrawn. Plaintiff may have been convinced that he could not sustain the proof on that issue, but the claim was not withdrawn of record. Such a claim, once made, must be expressly withdrawn. Fogel Refrigerator Co. v. Oteri, 398 Pa.

82, 156 A.2d 815 [1959]. A judgment or decree is conclusive not only as to those matters which were litigated but also as to those which could have or might have been litigated.

"The rule that what has been judicially determined shall not again be made the subject of controversy extends to every question in the proceedings which was legally cognizable, and applies where a party has neglected the opportunity of trial, or has failed to present his cause or defense, in whole or in part, under the mistaken belief that the matter would remain open, and could be made the subject of another proceeding." Schwan v. Kelly, 173 Pa. 65, 33 A. 1107 [1896].

Defendant's Motion for Summary Judgment is granted.

## II.

 Defendant has also moved to dismiss for lack of jurisdiction on the grounds that the damages which the plaintiff is entitled to recover cannot reach the required minimum of $10,000 [28 U.S.C. § 1332]. Defendant advances in support of this motion the evidence revealed by the discovery proceedings and the pretrial narratives. In any event, once jurisdiction is challenged the burden is placed upon the one asserting jurisdiction to sustain it. Nelson v. Keefer, 451 F.2d 289 [3rd Cir. 1971].

 Jurisdiction is determined as of the time of the filing the complaint. This complaint was filed by Charles Albright in his lifetime on October 27, 1965. He died November 13, 1965 and his widow and administratrix was substituted as plaintiff. The action is thus a surviving personal injury action. The elements of damage for which a plaintiff may have recovery in such an action are:

(a) Pain and suffering;

(b) Loss of gross earnings from date of injury to death;

(c) Loss of future earning power from date of death throughout the remainder of plaintiff's working-life span, less maintenance, reduced to present worth;

(d) Medical and hospital expenses. Incollingo v. Ewing, 444 Pa. 299, 282 A.2d 206 [1971].

There is one great difficulty in this case with the elements of pain and suffering and medical expense. As was noted in the prior section of this Opinion, at the time this action was filed plaintiff had pending an action against the City of Pittsburgh claiming damages for "contusions and blows to the chest, contusions to the abdomen, severe shock, sprain of the left wrist, possible traumatic neurosis, pain, suffering, inconvenience and medical bills."

Also, when Charles Albright entered Montefiore Hospital on November 29, 1963, the Admission's Record showed that he was admitted to the emergency room for "epistaxis"—nosebleed of twenty minutes duration. The history that was taken showed that he had a five–ten year history of hypertension for which he was receiving periodic injections, that he had been discovered a diabetic four months before and had been given insulin originally, but now controlled the condition by diet; that he had an ulcer and was taking Maalox and phenobarbital for this condition. He also reported infrequent headaches. The physical examination confirmed this condition. It was during this stay in the hospital that a bronchoscopy was performed revealing a growth on the lung, and on December 17, 1963 the right upper lobe of the lung was removed and found to contain a malignant growth. He was discharged on December 28, 1963.

On January 13, 1965, plaintiff was again admitted to Montefiore Hospital suffering an acute myocardial infarction. He was discharged on February 2, 1965.

On August 27, 1965, he entered the Veterans Administration Hospital in Pittsburgh. The diagnoses reported for which treatment was given and listed in

the hospital report are (in the order of clinical importance):

(1) Proctitis;

(2) Anal fissure;

(3) Giant cell carcinoma of chest wall and ribs, metastatic from right lung;

(4) Empyema;

(5) Wound infection, post-operative;

(6) Diabetes mellitus, mild;

(7) Arteriosclerotic heart disease;

(8) Hypertension;

(9) Aspiration pneumonitis;

(10) Fatty liver.

He underwent treatment for certain of these disorders, and on October 27, 1965 underwent surgery for a right pneumonectomy with excision of lower right chest wall and 6th, 7th, 8th and 9th ribs. He developed wound infection and empyema, aspiration pneumonitis and irreversible pulmonary decomposition and died November 13, 1965.

The pretrial record also indicates that Charles Albright was receiving permanent and total disability benefits from the Veterans Administration from September 21, 1964 for non-service incurred residuals of surgery for bronchogenic carcinoma, diabetes mellitus with hypertension, varicose veins, umbilical hernia, duodenal ulcer by history, obesity, emotional instability with gastric neurosis. He was last examined for disability benefits on October 21, 1964.

On March 6, 1963, plaintiff's family physician, Dr. Segall, submitted a report in connection with his application for Social Security disability benefits. The present condition was reported as "ambulatory" with: (1) Hypertension, (2) Hypertensive heart disease, and (3) Diabetes mellitus, for which he reported treatment as: (1) Insulin, (2) Digitalis, and (3) Diuretics. The condition was reported as "static", and that patient was "unable to work". The present illness was described as occuring July 15, 1962.

Plaintiff was also examined on April 8, 1963 by Dr. J. D. Silverman on a referral from the Commonwealth of Pennsylvania, Bureau of Vocational Rehabilitation, Division of Disability Determination. This was in connection with his claim for Social Security disability benefits. The diagnoses made were:

1. Diabetes Mellitus;

2. Essential hypertension;

3. Possible hypertensive heart disease;

4. Obesity;

5. Varicose veins with venous stasis;

6. Ulceration around the great toe.

The conclusion of Dr. Silverman was that "he is certainly unable to work at the present time and I would consider his prognosis poor unless more intensive therapeutic measures are instituted."

It is interesting to note that the chest examination at this time revealed no abnormality.

Plaintiff claims in this action medical expenses in the amount of $5,-544.50. Of this amount $1,429.50 is the bill of Montefiore Hospital for the period from November 29, 1963 to December 28, 1963. The sum of $3,362 is claimed for the Veterans Administration Hospital care from August 27, 1965 to November 13, 1965. The Veterans Administration has given notice of its subrogation rights for this sum under 42 U.S.C. § 2651. This is an independent claim of the Veterans Administration for which it can bring a separate suit, or allow the plaintiff to include it in his damage claim and upon recovery pay over to the Veterans Administration. Conley v. Maattala, 303 F.Supp. 484, [D. N.H.1969].

We feel that there is a grave doubt that plaintiff can include the bill of the Veterans Administration Hospital to establish the jurisdictional amount. The Veterans Administration is a separate plaintiff by statute, and although the plaintiff may represent the Veterans Administration in presenting the claim, the amount claimed or recovered does not

belong to the plaintiff. Claims cannot be aggregated to establish the jurisdictional amount. Snyder v. Harris, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 [1969].

"When two or more plaintiffs, having separate and distinct demands, unite for convenience and economy in a single suit, it is essential that the demand of each be of the requisite jurisdictional amount . . . ". Troy Bank of Troy, Ind. v. G. A. Whitehead & Co., 222 U.S. 39, 40, 32 S.Ct. 9, 56 L.Ed. 81 [1911].

However, there is a more serious impediment to establishing the jurisdictional amount, shared by both bill of Montefiore Hospital and the Veterans Administration Hospital. Although repeatedly advised during the pretrial process to set forth in detail the evidence of how the damage claims were to be specifically related to the claim in this case the plaintiff has not done so, and continues to lump the damage claims with other claims entirely unrelated to the alleged trauma which is asserted as the cause of action here. Even in the face of defendant's motion for summary judgment, which compels the plaintiff to come forward with evidentiary matter admissible at trial, the plaintiff has not done so.

■ While considerable latitude may be given plaintiff to establish the basis of the claim for damages, there must be something other than pure speculation upon which the jury can rely.

■ Our extensive recital of the medical conditions from which plaintiff suffered shows that plaintiff incurred medical expense for treatment of a variety of ailments, all of them grave and with a poor prognosis, which the plaintiff does not attempt to relate to the cause of action here. Even as early as April 1963 he was sufficiently disabled from these to be granted Social Security disability, when no suspicion of cancer existed.

■ It is incumbent upon the plaintiff to prove damages which were the proximate result of the trauma alleged.

"As defendant was, of course, not responsible for the accident of May 5, it was incumbent upon plaintiff to individuate the injuries and damages he then sustained from those suffered by him in the accident of April 16, for which alone defendant was liable. This he was obliged to do, not with absolute exactitude, but at least with reasonable approximation, and a jury could not properly find a verdict in his favor except in an amount fairly determinable from the evidence. Under such circumstances damages may not be based on a mere guess or speculation; the proof must be of a character to enable an intelligent separation of the damages caused by the negligence complained of from those otherwise sustained. (citations omitted) The evidence submitted by plaintiff did not sufficiently meet this requirement of the law . . .. There was no proof or reasonably permissible inference that the expenses incurred by him for medical attention were necessitated by the injuries he received on April 16 or that those injuries caused the loss of his wages and the pain and suffering he experienced after May 5." McGuire v. Hamler Coal Mining Co., 355 Pa. 160, 49 A.2d 396, 397 [1946].

■ The same rule is applicable to the claim for pain and suffering. No evidence has been presented in plaintiff's pretrial medical reports of the pain and suffering attributable to the cancer as opposed to that from the multitude of other ailments. In fact it may be noted that it was not because of cancer related symptoms that plaintiff entered the hospital on any occasion. It was for other symptoms. The cancer was discovered in the course of hospital treatment for other conditions.

■ Plaintiff's claim for the funeral bill is not an element of damages permitted in a surviving personal injury action. Incollingo v. Ewing, 444 Pa. 299, 282 A.2d 206 [1971].

■ Plaintiff's claim for loss of gross earnings in his lifetime, and for

future loss of net earning power less cost of maintenance reduced to present worth must also fail, both for the reasons stated above, and for the positive evidence that he had no earning power and no future expectation of earning power. At the time of filing suit, and for some years before, the plaintiff was totally and permanently disabled both under the strict standard of the Social Security law and under the Veterans Administration regulations. The Social Security law requires proof that a disability pensioner prove " . . . inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months. . . . ". [42 U.S.C. § 416(i)]. Plaintiff met that test two years before the present suit was filed on the basis of medical examination, which did not show any symptom of cancer of the lungs. Before the present suit was filed he also qualified for a Veterans Administration disability pension.

On July 10, 1964, in answer to the City of Pittsburgh's Interrogatory No. 40 asking the degree of impairment of earning power which he claimed, the plaintiff answered "Total impairment, which may be permanent."

While we have held that old-age pension benefits may be used as a measure of earning capacity, Krakar v. Don Swart Trucking, Inc., 323 F.Supp. 157 [W.D.Pa.1971], that was done in a case where there was no evidence of disability. The decedent there had merely exercised his option of continuing to work, or retiring on the fruits of his pension rights which were a form of deferred compensation. We said: " . . all persons, unless totally disabled, have some earning capacity." (p. 159)

The plaintiff has failed in response to the defendant's motion for summary judgment to come forward with any evidence to show that there is a genuine issue of fact as to plaintiff's earning power.

Thus, the plaintiff has failed to show that any evidence can be produced admissible in the trial of this action to support a claim for damages for (1) medical expenses incurred as a result of the trauma unrelated to other conditions not caused by the trauma; (2) pain and suffering endured as a result of the trauma unrelated to other conditions not the result of the trauma; and (3) loss of earnings or earning power.

The plaintiff has been given ample and repeated opportunity to come forward with legally sufficient evidence to show that there is a genuine issue of fact as to damages. The plaintiff has been unable to carry the burden of proof on this issue. We are convinced to a legal certainty that the evidentiary material submitted will not support a claim in excess of the jurisdictional minimum of $10,000. Nelson v. Keefer, 451 F.2d 289 [3rd Cir. 1971]; Dowling v. J. C. Penney Co., 300 F.Supp. 307 [W.D.Pa.1969].

Defendant's Motion to Dismiss is granted.

## ORDER

And now this 23rd day of October, 1972, this matter having come before the court on Defendant's Motion for Summary Judgment and Defendant's Motion to Dismiss for Lack of Jurisdiction, and the court having considered the briefs and evidentiary materials supplied in support of and in opposition to said Motions, and having considered the Pretrial Statements of the parties, and having heard counsel thereon, and having determined that there is no genuine issue of material fact with respect to the matters raised and that judgment should be rendered as a matter of law, it is ordered that:

(1) Defendant's Motion for Summary Judgment is granted on the grounds that the present action is barred by the settlement of a prior action against a dif-

ferent defendant, and Judgment is ordered entered for Defendant,

and

(2) Defendant's Motion to Dismiss for Lack of Jurisdiction is granted, and the Plaintiff's action is ordered dismissed for lack of jurisdiction.