Bollinger, Appellant, *v.* Randall.

Argued October 7, 1957. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*Donald G. Oyler*, with him *Charles W. Wolf*, for appellant.

*W. E. Shissler*, with him *Edward B. Bulleit, Nauman, Smith, Shissler & Hall*, and *Bulleit & Bulleit*, for appellee.

OPINION BY ERVIN, J., November 12, 1957:

The following excerpts from the opinion of Judge W. C. SHEELY for the court below will reveal the facts and the legal problem involved on this appeal: "On January 22, 1950, the minor plaintiff, Barry William Bollinger, then two years old, was injured when struck by an automobile operated by the defendant. A settlement of all claims of the minor and of his parents arising from the accident was agreed upon by the defendant's insurance carrier and Richard O. Bollinger, the boy's father. The settlement contemplated the institution of an action in the Court of Common Pleas of Adams County and approval of the terms of settlement by the court. The plaintiffs were not represented by counsel and all matters incident to the action and the

settlement were handled by the attorneys for the insurance company.

"An action in trespass was instituted on December 12, 1950, and on December 16, 1950, the petition of Richard O. Bollinger was presented to the court praying for approval of the settlement, etc. The petition set forth the circumstances of the accident, the injuries sustained by the minor plaintiff, and the damages which the parties believed resulted from the accident. The injuries to the minor plaintiff were described as 'a fracture of the right and left side of the frontal bone of the skull, numerous small lacerations over the face, and ptosis of the left eyelid.' It was also alleged that Mr. Bollinger believed that the compromise was for the best interest of the minor 'for the reason that there are questions as to the negligence of the defendant which made the ultimate outcome uncertain.' Under the terms of the settlement the sum of $156.50 was to be paid to Richard O. Bollinger for expenses of medical care; $100.00 to Mr. and Mrs. Bollinger for loss of wages necessitated by their care of their son; and $343.50 to the minor plaintiff. A hearing was held on January 15, 1951, after which the court entered an order approving the settlement. The amounts were paid as directed and on January 30, 1951, a satisfaction by authority showing receipt of $600.00 signed by Richard O. Bollinger and Mary E. Bollinger, was filed in the office of the Prothonotary.

"In February, 1954, an examination was made of the minor plaintiff as the result of an injury received in a fall. It was then discovered that the vision in the left eye was irretrievably lost due to atrophy of the optic nerve, a condition which the doctors believed was caused by the accident in 1950, and which the plaintiffs admit was 'a fact which had not previously been suspected by the parents.' As a result of this discovery

the plaintiffs presented a petition to the court on December 4, 1954, praying that the approval of the compromise be revoked; the judgment entered thereon be opened and set aside and the claim of the minor be presented (to a jury). It was subsequently discovered that no judgment had actually been entered and the petition was amended accordingly. A rule to show cause was granted upon the defendant and he has filed an answer to the petition. Depositions were taken and the matter is now before the court having been listed for argument by the plaintiffs.

"The defendant offered no depositions contradicting the testimony contained in the plaintiff's depositions as to the minor's injuries. For the purpose of this proceeding, therefore, we must accept as true the fact that as a result of the accident the minor plaintiff did sustain injury to the optic nerve of the left eye which has since caused blindness in the eye, and that this fact was unknown to the parties and to the court at the time the settlement was agreed upon and approved by the court. The failure to discover the condition was not due to any fraud or negligence of the parties. Doctor Wilbur Miller, of New Oxford, was called immediately after the accident and he admitted the boy to the Hanover Hospital where he was a patient from January 22, 1950 until February 4, 1950, being unconscious at least forty-eight hours. He was treated by Doctor Richard Dalrymple as a consultant to Doctor Miller, and x-rays were taken of his head. After his discharge, and while settlement of the claim was being considered, the parties returned the boy to the hospital about April or May, 1950, and he was examined again by Dr. Dalrymple and by Dr. Frederick Wright, chief surgeon at the hospital. At that time Dr. Dalrymple thought that the boy had recovered fairly well from the injury but he noticed that there was a slight ptosis or drooping

of the left eyelid and that the expression of the left eye did not appear normal. He therefore, recommended that an eye specialist be consulted. The parties took the boy to Dr. R. J. Wetzel, an eye specialist, who made at least two examinations; one of which was on July 29, 1950. He observed an accommodating squint of the left eye but could see nothing about the eye which would give the boy trouble in the future. Both pupils reacted to light and accommodation, and the tension of the eye was normal. He was not able to get good cooperation of the patient in making an ophthalmoscopic examination of the back of the eye. He did not feel that an examination of the interior of the eye was absolutely necessary and therefore did not anesthetize the child. The situation therefore, appears to be one which not only was not discovered prior to approval of the settlement but which could not have been discovered by the exercise of ordinary diligence, although the parties were cognizant of some injury to the eye.

"There can be no doubt that had it been known that the minor plaintiff was to lose the sight of his eye as a result of the accident the settlement would not have been approved, and probably would not have been made, at the amount paid in this case—unless we were satisfied that there was no liability on the part of the defendant and that the case was being settled on the 'nuisance value.' But, as we view the case, it is not necessary to discuss this latter question although the liability of the defendant is far from clear."

Appellant relies heavily upon *Rebic v. Gulf Refining Company,* 122 Pa. Superior Ct. 149, 186 A. 236, as authority for the court's power to set aside the order of court approving the settlement. That case is clearly distinguishable from the present case in that there the minor's father and his attorney wilfully deceived the court by stating that the minor had almost entirely re-

covered from her injuries and it was not believed they would cause any disability when they knew that she would be disabled as long as she lived. They further deceived the court by stating that the liability was doubtful when they knew that the liability was clear, and the settlement was a "wanton and woeful neglect of her rights." These facts are entirely absent in the present case. No one deceived the court in any way and there was no fraud on the part of anyone.

Appellant also relies upon *Bekelja v. Strates Shows, Inc.*, 349 Pa. 442, 37 A. 2d 502, but in that case the petition to open the judgment was presented within the same term of court that the judgment was entered and was therefore still within the court's control.

It is argued, however, that judgments other than adversary judgments may be opened at any time and the power of the court is not limited to the term at which the judgment was entered. *Pennsylvania Stave Co.'s Appeal*, 225 Pa. 178, 73 A. 1107, is cited as authority. That was an appeal to the common pleas from a tax assessment and before the hearing the parties agreed to an adjustment and the court entered a judgment pursuant to the agreement. Our Supreme Court said that this was an adverse judgment and could not be set aside after the expiration of the term at which it was entered. Appellant contends that a court approved settlement is similar to a judgment entered by amicable confession. With this we do not agree. An action in trespass was actually commenced in this case. Before the action came to trial it was settled with approval of the court. On principle, however, it would seem that an order of court directing satisfaction of a judgment or directing a discontinuance of an infant's action, entered after a hearing, should have the same finality as any other judgment entered by the court. Both parties are before the court and the court

must necessarily make findings of fact based on the testimony produced. If the settlement is not approved the action will proceed adversely, the settlement merely taking the place of an adverse judgment. Pa. R. C. P. No. 2039, under which settlements are approved, refers only to "actions" and does not affect the compromise of "causes of action" upon which suit has not been begun: Pa. R. C. P. No. 2039 (a)-2; *Lucabaugh Estate,* 74 D. & C. 68, 72. Where no action has been instituted the compromise of the infant's cause of action may be approved by the Orphans' Court, and such approval will fully protect the guardian: Fiduciaries Act of 1949, §1043 (14); *Schwartz's Estate,* 337 Pa. 143, 10 A. 2d 386. In Pa. R. C. P. No. 2206 (a)-2 it is stated: "The commencement of an action which is then compromised with court approval will fully protect the defendant."

Appellant also relies upon the rule of law that mutual mistake as to a material fact is ground for the rescission of a contract, the theory being that the settlement was nothing more than a contract even though it was approved by the court. Cases are cited from other courts but our research does not disclose any Pennsylvania cases in which this specific problem has been considered. *Currier v. Bilger,* 149 Pa. 109, 110, 24 A. 168, and *Seeley v. Citizens Traction Co.,* 179 Pa. 334, 36 A. 229, were cases involving the settlement of claims by adults. Underestimating damages or making a settlement before the damages are accurately ascertained is not considered such a mutual mistake of fact as to relieve from a release of damages or a settlement made by the parties.

We agree with what the court below so well said: "To hold otherwise would create a legal situation which would make it impossible, or at least inadvisable, to settle any suit. Settlements are necessarily based upon the facts which are then available to the parties and

there is always the risk that the injuries may prove to be more serious or less serious than then contemplated, and there is also the disputed question of liability to be considered. If a release is to be lightly set aside for no other reason than the parties were mistaken as to the extent of the injuries, the effect of the release and the advantage of settlement would be lost. Under these circumstances defendants would be compelled to let every suit go to trial in order to obtain an adverse judgment which would be binding and final. Many cases, including the 'nuisance value' cases, would never be settled and plaintiffs, instead of receiving funds immediately, would be compelled to wait for their damages and to undergo additional expenses in proving their cases, always with the risk that the verdict would be against them.

"While it is unfortunate for this minor that the extent of his injuries could not be ascertained before the settlement was made he is in no different position than he would have been had the settlement not been made. Had he failed to bring suit within two years his right of action would have been barred by the Statute of Limitations. Had he come to trial within that period he would have been able to prove no more damages than that upon which the settlement was based, and the judgment would have been final after the term of court at which it was entered. Moreover, in going to trial, he would have been exposed to the danger of a verdict against him on a questionable case of liability."

Order affirmed.