## Kent *v.* Fair, Appellant.

Argued March 24, 1958. Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

*David B. Fawcett, Jr.,* with him *Randall J. McConnell, Jr., Hamilton A. Robinson,* and *Dickie, McCamey, Chilcote & Robinson,* for appellant.

*Thomas D. Thomson,* with him *James P. McArdle,* and *Pringle, Bredin & Martin,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, April 21, 1958:

On July 11, 1953, a car being driven by Anthony Moffa and one being driven by Bert C. Fair collided, causing injuries to Shirley Mae Kent, an 18-year old girl, who was riding in Moffa's car. On October 19, 1954, Anthony Moffa and his wife, Grace Moffa, paid to Bert C. Fair and his wife, Hilda Fair, the sum of $951.10, and received from the Fairs a release which will hereinafter be quoted.

On March 30, 1955, Shirley Mae Kent, through her parents and her parents in their own right, brought an action in trespass against Bert Fair for the injuries she sustained in the collision of July 11, 1953. On May 15, 1955, Bert Fair filed a complaint to join Anthony Moffa as an additional defendant. On August 8, 1955, Moffa answered, denying any liability for the accident and adding as new matter an averment that

he had paid Fair the sum of $951.10 in settlement of all claims the Fairs could have had against him.

On August 29, 1956, Moffa moved for judgment on the pleadings, and on July 5, 1957, the Court of Common Pleas of Allegheny County granted the motion, entering judgment for the additional defendant on October 16, 1957. The original defendant, Bert Fair, has appealed.

Did the release signed by Fair, the original defendant, on October 19, 1954, discharge Moffa, the additional defendant from liability and bar Fair from joining Moffa as an additional defendant in the action brought by the Kents?

It did not.

The Fair release did not contemplate any action by the Kents against Fair and Moffa. It was strictly a release from such liability as might be owing from Moffa to Fair because of injuries and damages suffered by Bert Fair and his wife as the result of the accident in which both the Moffas and the Fairs were involved. We quote from the release in question:

"Release

In Full Of All Claims

"In Consideration of the payment of Nine Hundred Fifty One And 10/100ths . . . ($951.10) . . . Dollars to us in hand paid by Anthony G. Moffa And Grace Moffa, we do hereby release and forever discharge said Anthony G. Moffa and Grace Moffa from any and all actions, causes of action, claims and demands for, upon or by reason of any damage, loss or injury, which heretofore have been or which hereafter may be sustained by us in consequence of an accident on or about July 11, 1954."

It will be noted that the Fairs say nothing in the paper about releasing anyone for damages sustained by third persons. It releases Moffa from claims which

were made or might be made by the Fairs because of "any damage, loss or injury, which heretofore have been or which hereafter may be sustained *by us* in consequence of an accident on or about July 11, 1954." (Emphasis supplied.) Moreover, the odd amount of $951.10 would indicate that it more likely covered expenses and bills already ascertained in connection with injuries and damages suffered by the Fairs than that it would apply to any possible lawsuits of the future which third persons might bring against the Fairs.

The appellee Moffa urges upon us that the case of *Killian v. Catanese*, 375 Pa. 593, is authority for the proposition that a release of this kind protects the additional defendant from all actions of any kind arising out of the specified accident. But the release in the *Killian* case contains language so different and so vastly more sweeping than the one in the Fair release that it could almost be regarded as written in a foreign tongue. The original defendants there, George and Mario Catanese, gave to the additional defendant, George Wasilky, a release which said that they, the Cataneses "do hereby remise, release, and forever discharge GEORGE WASILKY, his heirs, executors and administrators, of and from all, and all manner of, actions and causes of action, suits, debts, dues, accounts, bonds, covenants, contracts, agreements, judgments, claims and demands whatsoever in law or equity, especially *the liability arising out of the accident on or about April 5, 1952, at or about 9th and Passyunk Avenues in the City and County of Philadelphia.*" (Italics in opinion of this Court).

The Court of Common Pleas of Philadelphia, in which the *Killian* case was litigated, held that the release, because of its practically limitless character, immunized Wisilky from all liabilities which could arise

from the accident upon which the lawsuit was based. We approved the action of the lower court and affirmed on the opinion filed by the court of common pleas, in which that court very properly said: "No attempt was made to limit the scope of the release to claims and demands of the original defendants. Quite to the contrary, the release given was from all liability, and this, to our way of thinking, included any liability which original defendants might seek to impose on additional defendant by reason of any claim made against original defendants, as plaintiff has done here."

A person who accepts money from a person against whom he has or may have a claim has it within his power to write into the release what he pleases and, in the absence of accident, fraud, or mistake, he is bound by what he writes. In *Lancaster Trust Co. v. Engle,* 337 Pa. 176, 182, this Court announced the rule applicable in situations of this kind: "The inference is obvious that if the agreement was intended to release any other obligation held by the receiver the parties either would have made specific reference to it or would have used appropriate general language similar to that used elsewhere in the agreement. It is true that the release clause is general and would include any and all obligations due the receiver from appellant. But it follows a recital which is specific in its phraseology and which referred to the only subject matter with which apparently these two parties meant to deal. The rule in such cases is that words of general application used in a release, which follow a specific recital of the subject matter concerned, are not to be given their broadest significance, but will be restricted to the particular matters referred to in the recital: . . ."

The appellee Moffa contends that the Fair release covered every situation which could arise out of the accident because it bears the heading: "RELEASE IN

FULL." He emphasizes that the release "contains two statements in letters as much as ⅜ inch high that it is a release in full." Size of print is scarcely a criterion for determining meaning or binding force. If the gravity of the subject matter were to be in direct proportion to the size of the print in which it is proclaimed to the world, billboard advertisements would surpass Congressional enactments in importance and sky writing would overshadow the Constitution, treaties and decisions of the highest Courts of the land. Moreover, a release in full can only be a release of what is described in the text of the release. A release in full of a grocery bill can cover only the period and the items specified in the bill, not all groceries ever purchased or to be purchased. The Fair release specifically limits its applicability and cannot be read by the Moffas to be all-enveloping and all-sweeping.

Judgment reversed with a procedendo.