Gail Esther FRANK and Rosaria Ann Muckin, Plaintiffs,

v.

VOLKSWAGENWERK, A. G. OF WEST GERMANY, Defendant,

v.

Rosaria Ann MUCKIN and Donald P. Miller, Third-Party Defendants.

Civ. A. No. 70-2071.

United States District Court, E. D. Pennsylvania.

Sept. 20, 1974.

Barney B. Welsh, Philadelphia, Pa., for plaintiffs.

Edward W. Madeira, Jr., Philadelphia. Pa., for defendant.

## OPINION

DITTER, District Judge.

This personal injury case comes before the court on defendant's motion for summary judgment based on the fact that both plaintiffs have previously compromised identical claims with the third-party defendant.

At 6:30 on the morning of August 5, 1968, the plaintiffs were travelling south on Route 13 in Bristol Township,

Pennsylvania, in a 1955 Volkswagen. Suddenly a Plymouth, driven by third-party defendant Miller, hurdled the low concrete median strip of Route 13 and struck the Volkswagen head on. Both plaintiffs suffered extensive damages, not only in money spent for medical expenses and time lost from the pursuit of their education and careers, but in the terms of physical disability and pain.

The parents, as guardian of then-minor Frank, instituted an action in trespass against Miller in the Philadelphia Court of Common Pleas. This action was settled pursuant to court approval on January 31, 1969. Later that year, plaintiff Muckin, also then a minor, petitioned the Court of Common Pleas of Bucks County for leave to compromise and settle her claim against Miller. The petition was granted on November 5, 1969. In addition, Muckin and her parents executed a release on November 13, 1969. The present action was commenced on July 30, 1970, against Volkswagenwerk A.G. of West Germany, which manufactured the vehicle in which plaintiffs were riding.

Plaintiffs assert that this car was not fit for the purpose for which it was intended because it was unable to sustain a collision without passenger-injury, a dangerous condition of which they had no notice. Defendant denies that the vehicle was "uncrashworthy" and also maintains that plaintiffs' recoveries from Miller preclude their present suit. Since I agree with defendant's latter position, there is no need to deal with the former.

### Frank's Settlement and Discontinuance

■ It is axiomatic that an injured party is not entitled to be paid twice for the same harm. Thompson v. Fox, 326 Pa. 209, 192 A. 107 (1937). In the present matter, Frank has described the injuries for which she seeks recovery from Volkswagenwerk in exactly the same words as she used in her prior suit against Miller.[1] The question, therefore, is whether the court-approved settlement of that case and its being docketed as "settled, discontinued and ended" is a bar to the instant suit.

Frank maintains that the settlement with Miller in no way fully compensated her for the damages incurred; rather it only covered the injuries caused by Miller. Moreover, she contends that since there was no judgment on the merits in the suit against Miller, the decision there is not conclusive as to the issues in this suit against Volkswagenwerk.

■ This case is based upon diversity of citizenship and the law of Pennsylvania applies. Under Pennsylvania common law, a plaintiff could bring separate actions against several defendants for a joint trespass, obtain judgment against each, and issue execution on the one he found most satisfactory. Once he received payment and either gave a release or satisfied a judgment of record, he could not thereafter execute against any other defendant or bring any further suit. The bar to additional actions applied whether the negligence was joint, concurrent, or successive so long as the prior defendant was liable for the same injury.

■ As it is pointed out in Hilbert v. Roth, 395 Pa. 270, 273, 149 A.2d 648 (1959), the common law rule was altered by Section 4 of the Uniform Contribution Among Joint Tortfeasors Act of 1951, 12 P.S. § 2085, *so far as releases are concerned*. Under the provisions of the Act, a release of one joint tortfeasor

---

1. Frank's recitation of her injuries in paragraph 7 of her complaint filed in the Philadelphia Court of Common Pleas is reproduced verbatim in paragraph 8 of the complaint filed in this Court. Both paragraphs claim Frank:

sustained multiple lacerations of the face, chin, chest, left shoulder, upper neck and neck, along with accompanying contusions and abrasions, fractures of the left femur, mid-shaft and femoral neck, cerebral concussion, permanent scarring, along with neurological and psychiatric problems and emotional shock.

will not discharge other joint tort-feasors [2] in the absence of an express provision to that effect, but the Act made no change in the Pennsylvania common law rule in so far as the satisfaction of a judgment is concerned. Therefore, although an injured party may get a judgment against several joint tortfeasors, if one of those judgments is satisfied, every other joint tortfeasor is released from his obligation toward the injured party.

Does the same rule apply if the prior suit is settled rather than being contested to judgment?

In Albright v. R. J. Reynolds Tobacco Company, 350 F.Supp. 341 (W.D.Pa. 1972), aff'd, 485 F.2d 678 (3d Cir. 1973), the plaintiff's automobile struck a street excavation and he sued the City of Pittsburgh in the Court of Common Pleas for the resulting damages. Among the alleged injuries the plaintiff suffered was the development of lung cancer. While the first suit was pending, the plaintiff instituted another suit in federal court against R. J. Reynolds Tobacco Company claiming that its cigarettes also helped cause his lung cancer. The plaintiff then settled the action against the City of Pittsburgh and the court marked the docket "Settled and Discontinued."

Judge Weber held that the marking of the docket "Settled and Discontinued" had the same effect as a satisfaction of a judgment. Therefore, he reasoned, since the plaintiff had received satisfaction for his claim of lung cancer from the City of Pittsburgh he had thereby released Reynolds from any liability for the same injury. The court went on to state that if the plaintiff did not feel he was receiving full satisfaction for

his cancer claim he could have specifically reserved his claim against other tortfeasors such as Reynolds.

■■ In attempting to deny the applicability of *Albright* to this case, Frank attacks the rationale of that decision by claiming Judge Weber misinterpreted certain Pennsylvania cases. I do not find this argument persuasive for a careful consideration of recent cases, especially Hilbert v. Roth, supra, leads me to agree with Judge Weber's sound and reasoned decision.[3]

However, Frank might have made an argument to distinguish *Albright* from the present situation. The plaintiff could have contended that *Albright* was incorrectly decided because of the conclusions reached by the Pennsylvania Supreme Court in Blanchard v. Wilt, 410 Pa. 356, 188 A.2d 722 (1963), which in limiting *Hilbert* to its facts, held that a consent verdict was not equivalent to a satisfaction of a judgment. On the surface, this is an attractive argument. On closer analysis, however, it is clear that *Blanchard* is not applicable to this case.

It must be remembered that the action in the Court of Common Pleas was instituted on behalf of Frank, then a minor, and therefore, special rules of procedure had to apply. See Pa.R.Civ.P. 2026–2050, 12 P.S. Appendix. Not only must a guardian, who is subject to court removal, bring and supervise a minor's action, but the court itself is given a special supervisory role.

Under the common law, because of his incapacity, a minor was allowed to disaffirm any settlement upon attaining his majority. In many instances, however, by the time a minor reached legal age, the statute of limitations on his

2. For the purposes of the Act, the term "joint tortfeasors" means two or more persons jointly or severally liable in tort for the same injury, whether or not judgment has been recovered against all or some of them. 12 P.S. § 2082. The distinction found in some jurisdictions between joint, concurrent, and successive tortfeasors is not recognized in Pennsylvania.

3. In a diversity case where there is no authoritative state court decision or statute, a federal court must decide the issue on the most likely basis the Supreme Court of Pennsylvania would. Beavers v. West Penn Power Co., 436 F.2d 869, 874–875 (3d Cir. 1971); Webb v. Martin, 364 F.2d 229, 231–232 (3d Cir. 1966); Gullborg v. Rizzo, 331 F.2d 557, 558 (3d Cir. 1964).

cause of action had run since it was not tolled by the settlement. Schumucker v. Naugle, 426 Pa. 203, 231 A.2d 121 (1967); New Amsterdam Cas. Co. v. Marietta, 27 Pa.D. & C.2d 234, 41 Wash. 202 (C.P.1961). In order to ameliorate this situation, the Commonwealth has special legislation to protect both the interests of the minor and at the same time give protection to any defendant that settles with a minor.

Pa.R.Civ.P. 2039 provides that the compromise or settlement of any action to which a minor is a party must be approved by the court upon presentation of a petition by the minor's guardian. The court also has the power to issue an order that sets counsel fees and directs to whom the settlement is to be paid. The rules specifically define judgment in this instance to mean, "any final judgment or final decree entered in any action." Pa.R.Civ.P. 2026.

This rule has been in operation for thirty-five years to protect minors. It gives the court final authority to approve any settlement of a minor's action by determining the adequacy of the consideration as well as insuring that only reasonable counsel fees are paid and that the fund be used for the benefit of the minor.

As a corollary, the court-approved settlement cannot be disaffirmed by the minor for it is a final disposition of his action in the nature of a final judgment. Langdon v. Strawhecker, 46 Pa.D. & C.2d 764, 766 (C.P. Warren Cty. 1969). This protects the defendant who believes that in settling he is being released from further liability to the minor.

■ Thus in applying special rules of procedure to the settlement of minors' claims—the final decree entered by the Philadelphia Court of Common Pleas is a final judgment. Therefore, the

satisfaction of that judgment by Miller is the equivalent to an ordinary satisfaction of judgment.

In Bollinger v. Randall, 184 Pa.Super. 644, 135 A.2d 802 (1957), the court rejected the argument that a court approved settlement of a minor's action was a judgment pursuant to an agreement and could be reopened by the court. Judge Ervin, discussing the adjudicating process of a minor's settlement. stated:

> On principle, however, it would seem that an order of court directing *satisfaction of a judgment or directing a discontinuance of an infant's action*, entered after a hearing, should have the same finality as any other judgment entered by the court. Both parties are before the court and the court must necessarily make findings of fact based on the testimony produced. If the settlement is not approved the action will proceed adversely, the settlement merely taking the place of an adverse judgment. (emphasis added)

*Id.* at 649–650, 135 A.2d at 805. Accord, R. Anderson, Pennsylvania Civil Practice § 2039.6, at 133 (1962).

■ Frank nevertheless insists that the settlement should not be considered a satisfaction since she has not been fully compensated for her injuries. While it is true that a compromise implies something less than payment in full, it is also true that most claims are somewhat inflated in the expectation that they will be reduced. In this case, as in most instances, the payment which Frank received included reimbursement for all out-of-pocket expenses.[4] Such amounts can easily be proved for the court's benefit. On the other hand, losses for pain and suffering, loss of services, or loss of anticipated income are less determinable and whether such claims have

---

4. In her brief Frank contends she, or her family, have incurred $8,200. worth of actual expenses. In her petition for leave to compromise a minor's action, Frank stated that she had received $500. from Muckin's insurance carriers and would personally receive $6,270. of $9,997. offered for settlement.

Furthermore, she stated that her medical bills would be covered by her mother's medical insurance. Thus, Frank has received $6,770. above her medical expenses. This amount of satisfaction is not so small in light of the facts to call upon the court to exercise its equitable powers.

been fully satisfied depends upon a variety of subjective considerations. Here, a court of competent jurisdiction, considered the injuries described by Frank and decided that the payment which she was receiving was adequate. The present suit seeks payment for those same injuries, and I cannot say Frank was not fully compensated before. It must be borne in mind that Frank could have limited her claim in the Common Pleas court by an appropriate differentiation of her injuries as expressed in her complaint or in discovery. Of course, this was not done. Frank could have also protected her interest in the present suit by executing a joint tortfeasor's release in favor of Miller.

Based on *Hilbert, Albright,* and the Pennsyvania Rules of Civil Procedure, I conclude that a court-approved settlement of a minor's claim is equivalent to the satisfaction of a final judgment for the purpose of determining whether a joint tortfeasor is released where recovery for the same injuries is sought.

*Muckin's Releases*

Muckin's settlement with Miller took a different procedural course. After an amount had been agreed upon, two releases were signed and a petition to approve the settlement was presented to the Court of Common Pleas. Although the routes were not the same, the result is—the compromise with Miller is a bar to recovery from Volkswagenwerk

The first Muckin release, signed only by her parents, essentially provided that for a consideration of $9,384.38, which would pay for Muckin's medical and legal expenses, the parents agreed to release Miller and "all other persons" from any claim resulting from the accident. The second release, entitled "Parents-Guardian Release and Indemnity Agreement," was signed by both Muckin and her parents. This release provided that in return for $668.12, the balance of the settlement after payment of medical expenses and legal costs, Miller and "all other persons" were to be released from any liability including

> any and all claims, demands, damages, actions, causes of action or suits of whatsoever kind or nature, and particularly on account of bodily injuries sustained by Rosaria Ann Muckin, a minor twenty years of age

resulting from the August 5, 1968 accident.

Plaintiff claims that as a minor she is able to disaffirm the release, that the document is ambiguous and does not release any of her rights, and even if it is a valid release, she did not intend to release anyone but Miller.

It is settled law in Pennsylvania that if a minor neither receives part of the consideration paid nor participates in the benefits of a settlement, she has a right to disaffirm it upon reaching her majority. Schmucker v. Naugle, 426 Pa. 203, 231 A.2d 121 (1967). This rule does not apply to this case. Here we have a twenty year old minor who not only participated in the settlement fund since most of the money went to pay her medical expenses, but also personally received the remaining consideration.

Moreover, Muckin is further estopped from disaffirming the release by the fact that it was made in conjunction with a court-approved settlement. As previously pointed out, there are special rules of procedure in Pennsylvania to protect minors and to make possible the settlement of claims they may assert. These settlements can only be accomplished if the minor is also bound Bollinger v. Randall, 184 Pa.Super. 644, 135 A.2d 802 (1957); Langdon v. Strawhecker, 46 D. & C.2d 764, 766 (C.P. Warren Cty. 1969). Here, Muckin petitioned and received court approval of her settlement with Miller, and she cannot now disaffirm that which the court has already stated will be considered binding.

Muckin's second contention that she was really not a party to the second release is unconvincing. Actually, it

was her parents' signatures that were unnecessary. They had released their personal claims against Miller and all other persons in the first release and did not have to sign the second. It was felt, however, that since they were guardians of the minor plaintiff, their acquiescence in that capacity to the second release was necessary. It is uncontested that Muckin actually signed the release, that it provided she would receive the money set forth in the court-approved settlement, and that she actually received the consideration.

Finally, the plaintiff argues that even if the release was valid vis a vis Miller the parties did not intend the release to cover third parties. Moreover, since the extent of Muckin's injuries were not apparent at the time the release was signed, she could not have contemplated releasing Volkswagenwerk from liability due to defective design.

■ It is true that the intentions of the parties determine the effect of a lease. Leach v. Mon River Towing, Inc., 363 F.Supp. 637, 639 (W.D.Pa. 1973). However, what the parties intended must be derived primarily from the language of the release. Evans v. Marks, 421 Pa. 146, 154, 218 A.2d 802 (1966). Its natural and ordinary meaning must be enforced unless a party can unequivocally prove fraud or mutual mistake. Sears Roebuck and Co. v. Jardel Co., 421 F.2d 1048, 1051 (3d Cir. 1970); Evans v. Marks, supra. The law is clearly settled that ignorance as to the extent of one's injuries is not grounds for establishing mutual mistake. Dorenzo v. General Motors Corp., 334 F.Supp. 1155, 1157 (E.D.Pa.1971), appeal dismissed, 474 F.2d 1339 (3rd Cir. 1973); Emery v. Mackiewicz, 429 Pa. 322, 240 A.2d 68 (1968); Bollinger v. Randall, supra 184 Pa. Super. at 650–651, 135 A. 2d 802.[5]

■ Muckin contends that neither she nor Miller contemplated that a third party such as Volkswagenwerk was to be included in the terms of the release. This assertion is contradicted by the language they adopted in the release for it would be difficult to find broader or more inclusive words. It essentially released the whole world from any form of liability arising out of the August 5 accident, and there has been no suggestion that this language resulted from some mutual mistake.

Muckin argues that the words "all other persons" are ambiguous and should therefore be strictly construed to exclude Volkswagenwerk. As Judge Wright observed, however:

No word in a contract is to be treated as surplusage or redundant if any reasonable meaning consistent with the other parts can be given to it

. . .

General Mills, Inc. v. Snavely, 203 Pa. Super. 162, 169, 199 A.2d 540, 544 (1964). The words "all other persons" either mean exactly what they say or they have no meaning at all. As I construe this phrase, "all" means "all," and there is no mystery or ambiguity about it. Dorenzo v. General Motors Corp., supra, Hasselrode v. Gnagey, 404 Pa. 549, 172 A.2d 764 (1960); Griffith, *The Meaning and Significance of Section 4 of the Uniform Contribution Among Tortfeasors Act*, 31 Pa.Bar Assoc.Q. 322, 327–28 (1960); Holland v. McArdle, 9 Pa. D. & C.2d 165, 105 P.L.J. 65 (C.P. Allegheny Cty. 1957). To give any other construction to these words would be to rewrite the contract between the parties.

■ By operation of law a release of one joint tortfeasor does not discharge other tortfeasors "unless the release so provides." 12 P.S. § 2085. Unfortunately, Muckin waived her right to benefit from this rule when she signed this release. The courts have uniformly interpreted the phrase "all other persons" literally to release anyone and everyone.

5. Muckin's claim that the extent of her injuries was not apparent at the time she signed the release is difficult to accept. The release was signed a year and a half after the accident while she was under expert medical care. Surely by then the extent of her injuries were known.

Panichella v. Pennsylvania R.R., 268 F.
2d 72 (3d Cir. 1959), cert. denied, 361
U.S. 932, 80 S.Ct. 370, 4 L.Ed.2d 353
(1960); Bonar v. Hopkins, 311 F.Supp.
130 (W.D.Pa.1969), aff'd., 423 F.2d 1361
(3d Cir. 1970); Long v. Heinberger,
195 F.Supp. 835 (M.D.Pa.1961). In such
cases, as Justice Musmanno aptly observed:

> A person who accepts money from
> a person against whom he has or
> may have a claim has it within his
> power to write into the release what
> he pleases and, in the absence of acci-
> dent, fraud, or mistake, he is bound
> by what he writes  .  .  .

Kent v. Fair, 392 Pa. 272, 276, 140 A.2d
445, 447 (1958).

Therefore, I conclude that the actions
against the defendant, Volkswagenwerk,
by both plaintiffs must be dismissed.