Gail Esther FRANK, a minor by her parents and guardian, Shirley J. Frank et al., Appellants,

v.

VOLKSWAGENWERK, A. G. OF WEST GERMANY, Appellee,

v.

Rosaria Ann MUCKIN and Donald P. Miller, Third-Party Defendants.

No. 74–2150.

United States Court of Appeals, Third Circuit.

Argued May 15, 1975.

Decided Aug. 8, 1975.

Barney B. Welsh, Albert Ominsky, Koral & Welsh, Philadelphia, Pa., for appellants.

Judith Dean, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for appellee.

Before STALEY, ROSENN and HUNTER, Circuit Judges.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge:

This is a diversity case in which we are required to determine what effect, under Pennsylvania law, court-approved settlements reached by two separate minor plaintiffs in their respective claims against one tortfeasor would have on a subsequent attempt by those same plaintiffs to sue a second tortfeasor for injuries sustained in the same accident.

Appellants Frank and Muckin, plaintiffs below, were injured on August 5, 1968, when the Volkswagen in which they were riding collided head-on with a car driven by third-party defendant Donald Miller. Miller's car had crossed over into the left-hand lane of the highway, and he was clearly at fault. On November 18, 1968, plaintiff Frank (then a minor) instituted suit against Miller in the Court of Common Pleas of Philadelphia County. Plaintiff's mother and her counsel subsequently petitioned the court for leave to compromise Frank's claim pursuant to Rule 2039 of the Pennsylvania Rules of Civil Procedure, which requires court approval of the compromise or settlement of any action in which a minor is a party. The court approved the settlement in the amount of $9,997.50, which represented the maximum amount she could obtain under Miller's liability insurance policy. Frank settled for this amount because an investigation indicated that Miller did not have, nor was he likely to obtain, sufficient assets to satisfy an excess verdict. On February 20, 1969, the docket was marked "settled, discontinued and ended." No release was signed in the Frank case.

Muckin's claim against Miller was likewise settled for $9,997.50, but through a different procedural route since Muckin never actually instituted suit against

Miller. Muckin and her parents instead petitioned the Court of Common Pleas of Bucks County for leave to compromise and settle her claims arising out of the accident, and on November 5, 1969, the petition was granted. Shortly thereafter, on November 13, 1969, Muckin's parents signed two documents, one entitled "Release of All Claims" and the other entitled "Parent-Guardian Release and Indemnity Agreement."

On July 30, 1970, appellants instituted the present suit against defendant Volkswagenwerk, alleging that they were injured as a result of the "uncrashworthiness" of their car, which defendant had manufactured. While appellants are now asserting a new theory of liability, it is clear that the injuries for which they seek recovery are identical to those which were the subject of the earlier settlements.[1] Defendants moved for summary judgment on the alternative grounds that the prior settlements barred the present suit and that the defendant was under no duty in 1954 to manufacture crashworthy vehicles which would withstand a head-on collision. The district court, 382 F.Supp. 1394, accepted the first theory and granted summary judgment for defendant against both plaintiffs without considering the "uncrashworthiness" issue. We reverse as to Frank but affirm as to Muckin.

## I. THE FRANK SETTLEMENT

Frank contends that the marking of a docket "settled, discontinued and ended," as was done in her suit against Miller, is binding only as between the parties to that settlement, and thus does not bar suit against another defendant (in this case, Volkswagenwerk) which was not a party to the settlement. However, the principal authority on which she relies, *Sale v. Ambler*, 335 Pa. 165, 6 A.2d 519 (1939), is clearly distinguishable since it did not involve a situation where one plaintiff tried to sue two different defendants. Rather, it was a case in which two different plaintiffs attempted to sue the same defendant on behalf of the corporation in which they were both shareholders. The court there permitted the second suit because the settlement in the first one had been collusive and had adversely affected the second plaintiff's rights. Here there is no allegation of fraud or collusion which would warrant allowance of the second suit, and *Sale v. Ambler* cannot be construed as establishing a general rule that the marking of the docket "settled, discontinued and ended" is binding only as between the parties to the first lawsuit.

On the other hand, defendant's contention that the marking of that docket "settled, discontinued and ended" *necessarily* bars a later suit against a different tortfeasor likewise does not find support in the Pennsylvania cases. Two of the cases cited by defendant for this proposition, *Barson's and Overbrook, Inc. v. Arce Sales Corp.*, 227 Pa.Super. 309, 324 A.2d 467 (1974), and *Bollinger v. Randall*, 184 Pa.Super. 644, 135 A.2d 802

1. Appellants concede that the injuries alleged in the state court proceedings were identical to those alleged in this complaint, but contend that the injuries were nevertheless different in the sense that recovery in this suit would be limited to recovery for injuries either aggravated or caused by the defect in the automobile and would not include those injuries caused by the initial impact. This contention is meritless. Assuming *arguendo* that a distinction between these two types of injuries can be made on the facts of this case, that would merely mean that recovery for injuries resulting from "uncrashworthiness" would be less inclusive than recovery for injuries resulting from Miller's negligence. It is well settled in Pennsylvania that a tortfeasor is liable for all the damages which ordinarily and in the natural course of things have resulted from the commission of the tort. See, e. g., *Hillsdale Coal & Coke Co. v. Pennsylvania R. Co.*, 229 Pa. 61, 78 A. 28 (1910). Thus, Miller was liable for all the damages resulting from the collision, including those attributable to the alleged "uncrashworthiness" of plaintiffs' car, since they were not so bizarre or unforeseeable as not to be chargeable to him. Consequently, to the extent that the settlements constituted satisfaction of plaintiffs' injuries sustained in the collision—the real issue in the case—they necessarily encompassed any damage award attributable to "uncrashworthiness."

(1957), were ones in which the defendant in the second suit had been a party to the earlier proceedings. Thus, despite the broad language in those cases, they cannot be taken as support for the contention that Frank's suit against Volkswagenwerk should be barred.

The more relevant line of authorities consists of those cases dealing with the question of whether the prior proceedings resulted in a satisfaction of a judgment which would bar any subsequent action against another joint tortfeasor. Under Pennsylvania common law, the cases drew a clear distinction between the consequences of *recovery* of a judgment and of *satisfaction* thereof. A plaintiff was entitled to bring suit against as many joint tortfeasors as he wanted and could recover a judgment against each. However, once he obtained satisfaction from one joint tortfeasor, whether by satisfying the judgment of record or by giving a release, he could not thereafter execute or bring suit against any other joint tortfeasor. *Hilbert v. Roth*, 395 Pa. 270, 149 A.2d 648 (1959). This common law rule allowing but one satisfaction applied not only where a plaintiff sued and proceeded to verdict, as in *Hilbert*, but also where a settlement was entered into after the first suit had been instituted and then discontinued prior to verdict, as in *Thompson v. Fox*, 326 Pa. 209, 192 A. 107 (1937), and *Peterson v. Wiggins*, 230 Pa. 631, 79 A. 767 (1911), and where a settlement had been reached even without instituting suit against the first defendant, as in *Smith v. Roydhouse, Arey & Co.*, 244 Pa. 474, 90 A. 919 (1914). Consequently under the early Pennsylvania cases applying the common law rule, the settlement between Frank and Miller would appear to bar Frank's suit against Volkswagenwerk.

In 1951, Pennsylvania enacted the Uniform Contribution Among Tortfeasors Act (hereinafter, "Uniform Act"). Act of July 19, 1951, P.L. 1130, §§ 1–8, 12 P.S. §§ 2082–2089. This Act drastically changed the common law in some respects, but left it untouched in others. With respect to either recovery or satisfaction of a judgment, the law has been basically unchanged. Thus, just as under the common law, a plaintiff may recover as many judgments against as many tortfeasors as he wishes, but upon satisfaction of one judgment he may not sue or execute against another joint tortfeasor. That is the clear holding of *Hilbert v. Roth, supra*, where the plaintiff, who had satisfied a judgment of $10,000 against the first tortfeasor, was barred from bringing another suit against the second tortfeasor.

Where the Uniform Act clearly worked a substantial change in the common law was in the area of releases. Under the common law, a release of one joint tortfeasor was deemed to be a release of all, even though the release by its terms purported to release only the first tortfeasor. *Union of Russian Societies of St. Michael and St. George v. Koss*, 348 Pa. 574, 577, 36 A.2d 433, 434 (1944); *Thompson v. Fox, supra*. The Uniform Act changed this rule, so that now a release of one joint tortfeasor will discharge the others only if it expressly so provides. Section 4 of the Act, 12 P.S. § 2085, states:

A release by the injured person of one joint tortfeasor, whether before or after judgment, does not discharge the other tortfeasors unless the release so provides, but reduces the claim against the other tortfeasors in the amount of the consideration paid for the release or in any amount or proportion by which the release provides that the total claim shall be reduced if greater than the consideration paid.

Thus, *Hilbert v. Roth, supra*, appears to have construed the Uniform Act to have changed the common law rule, which permitted but one satisfaction, only where the satisfaction of the first judgment has been accompanied by the signing of a release which does not purport to discharge the other tortfeasors.

Defendant relies heavily on *Hilbert* and argues that the failure of plaintiff Frank to sign a release brings her under

the common law rule barring the present suit against Volkswagenwerk. The problem with defendant's analysis is that it does not satisfactorily explain a more recent Pennsylvania Supreme Court decision, *Blanchard v. Wilt*, 410 Pa. 356, 188 A.2d 722 (1963), which we construe as fundamentally altering Pennsylvania law. At the outset, we acknowledge that the *result* in *Blanchard* is consistent with defendant's analysis. In that case, plaintiff brought separate actions against the general contractor (Wilt) and the subcontractor (Nehrig) for fire damage allegedly caused by defendants' negligence. The case against Wilt came to trial first, and the court entered a compulsory nonsuit against plaintiff. While plaintiff was appealing that nonsuit, the case against Nehrig, the subcontractor, came to trial and was settled by means of a consent verdict. The parties then signed a release which discharged only the subcontractor. Although no judgment was entered on the verdict, a receipt of payment was filed of record, the verdict was marked satisfied and the action was discontinued. Subsequently, when the nonsuit was reversed on appeal and the case against Wilt was remanded for trial, the defendant pleaded the settlement between plaintiff and Nehrig as a defense. The trial court disallowed this defense and was affirmed on appeal.

Volkswagenwerk argues that the presence of a release in *Blanchard* which had failed to discharge other tortfeasors distinguishes that case from the present one.[2] It is also clear that the *Blanchard* court relied in part on the release in permitting the second suit. After construing the letter in question to be a release, the court stated: "Being a release, it does not discharge Wilt from liability, since it does not so provide."

410 Pa. at 360, 188 A.2d at 724. Had the court said only this much, *Blanchard* would clearly support defendant's position. However, the court in *Blanchard* also stated: "Even if it [the letter in question] were not a release, the presence or absence of this fact is not determinative of the question of the application of the act." 410 Pa. at 359, 188 A.2d at 724. This sentence appears to undercut defendant's argument that the absence of a release in this case is controlling and that it requires a return to the common law rule which would have barred the present suit.

Even more important, in our view, is language which appears later in the *Blanchard* opinion. In what appears to be an alternative basis of its holding, the *Blanchard* court distinguished *Hilbert*, not on the ground that no release had been signed in the latter case, but on the ground that the satisfaction of the consent verdict was not equivalent to the satisfaction of a judgment:

"Nor can we agree with appellants' that the satisfaction of the consent verdict was a satisfaction of a judgment thereby bringing the case under the rule of *Hilbert v. Roth,* supra. The verdict against Nehrig was not reduced to judgment and no judgment was ever entered against him. Even if judgment had been entered against Nehrig, appellants would not be discharged since, 'The recovery of a judgment by the injured person against one joint tortfeasor does not discharge the other joint tortfeasor': Act of 1951, supra, § 3, 12 P.S. § 2084. But more importantly, *no judgment* against Nehrig was ever *satisfied.* In *Hilbert,* supra, *judgment was entered and satisfied after an adversary action on the merits.* The court was justified

**2.** *Blanchard* perhaps can also be distinguished on the basis of its unusual procedural history. As noted earlier, the "second" suit which the general contractor argued was barred by the prior settlement had in fact been instituted prior to the settlement, and the appeal challenging the compulsory nonsuit was pending at the time the settlement was reached in the suit against Nehrig, the subcontractor. Thus, it is

arguable that to bar the suit against Wilt because of the settlement with Nehrig would have been particularly anomalous, since the Pennsylvania Supreme Court had reversed the nonsuit in favor of Wilt and had remanded that case for trial. However, nothing in the court's language in *Blanchard* indicates that the result in any way turned on the case's procedural context.

in assuming therein that the judgment represented the true value of the claim." 410 Pa. at 360, 188 A.2d at 725. (Emphasis in original.)

We believe that this passage, especially the last three sentences, expresses a significant change in Pennsylvania law and is language that we cannot disregard. As noted previously, the cases prior to the enactment of the Uniform Act had applied the "one satisfaction" rule even where a settlement had been reached prior to proceeding to verdict. *Thompson v. Fox, supra; Peterson v. Wiggins, supra; Smith v. Roydhouse, Arey & Co., supra.* The above passage from *Blanchard*, however, indicates that the "one satisfaction" rule bars a subsequent suit against another joint tortfeasor only where the prior proceedings can reasonably be construed to have resulted in a full satisfaction of the plaintiff's claim. Where the prior satisfaction occurred after an adversary action on the merits, it is most permissible to conclude that there has been a full satisfaction. This reasoning in *Blanchard* is generally consistent with *Hilbert v. Roth, supra*, where the court stated: "With respect to a satisfaction of judgment, however, particularly where, as here, it follows an adversary trial in which plaintiff proved his damages, it may more safely be assumed that the judgment does represent the true value of the claim and therefore, when the plaintiff has it marked satisfied of record, the common law assumption that he is satisfied may reasonably be permitted to operate." 395 Pa. at 275, 149 A.2d at 651–52.

It is not clear from *Blanchard* and *Hilbert* whether the "one satisfaction" rule is now restricted to those cases in which the prior satisfaction followed an adversary action on the merits, and we need not so decide. What does seem clear is that the court in the second suit must be satisfied that the prior proceedings, however resolved, were of such a nature that the presumption of full satisfaction can operate. Where the prior satisfaction was based on a judgment following an adversary action on the merits, the presumption of full satisfaction would appear to be conclusive. On the other hand, where there was no prior adversary action on the merits, as was the case here, we believe that the Pennsylvania courts would at least look closely at the circumstances of the prior settlement to see whether the satisfaction, in the words of *Blanchard*, "represent[ed] the true value of the claim."

The district court was aware of the problems posed by *Blanchard*, but found that case not controlling. Basically, it concluded that, because the settlement was approved by the court in accordance with the special rules governing settlements involving minors, Pa.R.Civ.P. 2039, the final decree of the Philadelphia Court of Common Pleas was a final judgment, and "the satisfaction of that judgment by Miller is the equivalent to an ordinary satisfaction of judgment," rather than to the "consent verdict" involved in *Blanchard*.

We respectfully disagree. In the first place, even assuming *arguendo* that the state court decree in this case was a "judgment" for these purposes, we are reluctant to construe the provisions requiring court approval of minors' settlements, which were enacted largely for the minors' protection, as foreclosing them from a cause of action which they might have had if they had been adults. We are unaware of any Pennsylvania authorities which have construed these provisions to have such restrictive consequences.[3] More importantly, we do not believe that this is a case where the presumption of full satisfaction can be

---

**3.** The district court cited *Bollinger v. Randall*, 184 Pa.Super. 644, 135 A.2d 802 (1957), for the proposition that court-approved settlements of actions involving minors would have the same finality as any other judgment entered by the court. As noted previously, however, *Bollinger* was a case in which the parties to the settlement and the parties to the subsequent lawsuit were identical. Thus, the case states a rule no different than that which would be applicable where the parties had all been adults, and it has no bearing on whether a plaintiff, either an adult or a minor, may sue *another* defendant after reaching settlement with one tortfeasor.

deemed to operate. The record in this case shows quite clearly that the settlement was sought, and entered into, because Frank's parents and her attorney concluded that the most they could recover from Miller was the maximum coverage under his insurance policy available to the plaintiff. This is the reason given both in the petition to compromise the claim and in the affidavit of Frank's attorney, annexed thereto. The affidavit of Frank's mother, also annexed to the petition to compromise, indicated that her daughter had still not fully recovered from her injuries at the time the settlement was sought, and an affidavit of Miss Frank's physician stated that the plaintiff "will be unable to attend a Hearing at City Hall pertaining to the settlement of her automobile accident claim and will be unable to attend same for a long time in the future due to the fact that she is presently in a body cast as a result of injuries sustained." Contrary to the view taken by the district court, we see no evidence that the state court determined that the payment Miss Frank would receive under the settlement was adequate in the sense that the insurance payment represented the true value of her claim. All we see is that the state court approved a settlement in which Frank recovered the full amount of the insurance coverage available to her. Under the circumstances of this case, we are no more satisfied than we believe the court in *Blanchard* was that the first satisfaction "represent[ed]" the true value of the claim." We believe instead that the settlement here is more akin to the "consent verdict" reached in *Blanchard*, and thus should not bar the present suit.

We do not believe that our result is unfair to defendant Volkswagenwerk or that we are permitting plaintiffs to continue suing different defendants until they recover what they believe is full compensation. Here the doubt as to whether the settlement represented the true value of the claim is raised by the circumstances surrounding the settlement itself, rather than evidence subsequently coming to light. Furthermore, defendant Volkswagenwerk concedes that Frank could have maintained this suit if she had signed a release discharging only Miller and his insurance company. We do not see what policy is furthered by making the immunity of an alleged tortfeasor who was not a party to any prior proceedings depend on the fortuitous fact that a release had been signed. The fact that Frank could clearly have protected her rights by signing a release does not seem helpful on the question of whether she should be penalized for not doing so, since we do not see how the absence of such a release could in any way have misled or prejudiced Volkswagenwerk, which was not a party to the earlier proceedings. Most important, we construe the Pennsylvania Supreme Court's most recent decision on the subject—*Blanchard v. Wilt, supra* —as playing down the importance of a release on the question of the right to bring a subsequent suit, and as requiring a consideration of whether the first proceedings resulted in an award representing the true value of the claim.

■■ In sum, because we believe that under *Blanchard* the absence of a release is not determinative on the question of the right to bring a subsequent suit against another tortfeasor, and because we do not believe that the settlement in the earlier proceedings can be presumed to be a full satisfaction for plaintiff Frank's injuries, we believe that the Pennsylvania courts would not hold the present suit barred.[4] We emphasize that

4. We thus decline to follow *Albright v. R. J. Reynolds Tobacco Co.*, 350 F.Supp. 341 (W.D. Pa.1972), aff'd, 485 F.2d 678 (3d Cir. 1974). In that case, the district court relied upon a docket entry of settlement and discontinuance after a court-supervised conciliation procedure as foreclosing recovery against another unrelated tortfeasor. To the extent that the district

court decision in *Albright* would be support for Volkswagenwerk's position in this case, we conclude that it does not accurately state Pennsylvania law, since it at no point discussed *Blanchard*.

On October 25, 1973, we affirmed the district court decision in *Albright* by judgment order. A judgment order of this court affirm-

**328**

our decision is limited to cases in which a plaintiff, who settled in one lawsuit, sues a different defendant where no release has been signed. Nothing in this opinion should be construed as authorizing a second suit against the same defendant, even where the first satisfaction may be considered inadequate, see *Bollinger v. Randall, supra,*[5] or against another defendant in a case where a release has been signed explicitly discharging all tortfeasors. See *Hasselrode v. Gnagey,* 404 Pa. 549, 172 A.2d 764 (1961).

## II. THE MUCKIN SETTLEMENT

As noted at the outset of this opinion, Muckin's claim against Miller was settled through a different procedural route. Although we are not pleased with the prospect of affirming as to one plaintiff while reversing as to the other, where both allege the same cause of action, our reading of Pennsylvania law convinces us that the district court was correct in granting summary judgment against Muckin.

█ The two principal issues in Muckin's appeal are (1) whether she was a party to a release which discharged Volkswagenwerk, and (2) if so, whether she can now disaffirm the release on the ground that she had signed it while still a minor.[6] As noted previously, there were two releases in this case—a general release signed only by Muckin's parents, and a "Parent-Guardian Release and Indemnity Agreement" signed both by Muckin and her parents. Muckin claims that a release signed only by her parents would not be binding on her. We need not consider this point, since we conclude that the second document—the "Parent-Guardian Release and Indemnity Agreement"—was a general release and that Miss Muckin was a party thereto. The terms of this document explicitly released, in addition to Miller and his insurance company, "all other persons, firms or corporations liable, or who might be claimed to be liable . . . from any and all claims, demands, damages, actions, causes of action or suits of whatsoever kind or nature, and particularly on account of bodily injuries sustained by Rosaria Ann Muckin, a minor twenty years of age, . . . in consequence of an accident on or about the 5th day of August, 1968. . . ." Thus, the terms of this release comply with section 4 of the Uniform Act, quoted previously, and has the effect of discharging all other tortfeasors. The fact that the release did not specifically mention Volkswagenwerk is irrelevant, since defendant is clearly encompassed within the language of the release. See *Hasselrode v. Gnagey, supra;*[7] *Brill's Estate,*

ing a judgment of a district court signifies that we have found no error in the result reached, not that we necessarily adopt the rationale of the trial court. Furthermore, on November 23, 1973, we amended our judgment order to read that the affirmance was based "on the ground that appellant's claim failed to comply with the jurisdictional amount requirement of 28 U.S.C. § 1332." Thus, our affirmance of the district court decision is not to be construed as an acceptance of that portion of its opinion dealing with the question confronting us here.

5. We note that Pennsylvania authorities indicate that, even in this situation, a subsequent suit against the same party may be permissible where the settlement was approved by a court which had been "willfully deceived" as to the extent of the plaintiff's injuries. *Rebic v. Gulf Refining Company,* 122 Pa.Super. 149, 186 A. 236 (1936), discussed and distinguished by the court in *Bollinger, supra.*

6. Muckin was twenty years of age at the time the settlement was reached and the releases were signed (November, 1969), which was prior to the enactment of the 1972 law reducing the age of majority to eighteen. 73 P.S. § 2021.

7. *Hasselrode* clearly disposes of Muckin's contention that, because a release covers only those matters which may fairly be said to have been within the contemplation of the parties when the release was given, and because she did not contemplate releasing Volkswagenwerk, the release cannot be held to bar this suit. The release in *Hasselrode,* which was substantially identical in wording to the release in this case, was held to bar suit against the employer of the person with whom plaintiff had previously settled. Furthermore, the cases which Muckin cites in support of her position are clearly distinguishable. In *Restifo v. McDonald,* 426 Pa. 5, 230 A.2d 199 (1967), the court declined to construe the release as barring the enforcement of a claim for contribution which had not accrued at the time of the signing of the release. In *Wenger v. Zeigler,* 424 Pa. 268, 226 A.2d 653 (1967), the ques-

337 Pa. 525, 12 A.2d 50 (1940); *Three Rivers Motor Co. v. The Ford Motor Co.*, 522 F.2d 885 (3d Cir. 1975). Furthermore, there is no allegation in this case of fraud, duress, accident or mutual mistake which would make the written terms of the release non-binding. See *Evans v. Marks*, 421 Pa. 146, 218 A.2d 802 (1966); *Kent v. Fair*, 392 Pa. 272, 276, 140 A.2d 445, 447 (1958).

Muckin nevertheless claims that, despite her signature to the second release, she was not a party thereto. Her argument is premised on the fact that the document was identified as a "Parent-Guardian" release; that the undersigned were identified as "individually and as parents and guardians;" that she, the minor, was not identified as an "undersigned;" and that the instrument did not provide any line for her to write "I have read the above." Consequently, Muckin contends that her signature to the release was merely "gratuitous." However, this argument cannot stand in the face of *Campbell v. Sears, Roebuck & Co.*, 307 Pa. 365, 369, 161 A. 310, 312 (1932), where the Pennsylvania Supreme Court was faced with a similar contention and concluded:

> "We are satisfied the release was the plaintiff's own contract. True, as shown on its face, it was made by the mother, in her own right, and for her daughter. The plaintiff by adding her own signature, made it her own, not only by accepting it personally, but by approving the act of her mother done in her behalf."

We also note that plaintiff wrote her signature in a printed space at the bottom of the document (under the two spaces provided for her parents' signatures), which was specifically labelled "minor," thereby further indicating that

she must be considered a party to the release. Given the terms of the document and the *Campbell* decision, we see no unresolved issue of fact which would preclude a granting of summary judgment. The question of whether Muckin was a party to the second release is purely a legal question which the district court properly resolved against her.[8]

■ The remaining point to be considered is whether Muckin can now disavow a release which she signed as a minor. While the law in Pennsylvania generally is that minors may disaffirm their contracts upon reaching majority, the cases involving releases have all placed considerable emphasis on the question of whether the minor had personally received part of the consideration paid therefor or had participated in its benefits, *Schmucker v. Naugle*, 426 Pa. 203, 231 A.2d 121 (1967); *Haines v. Fitzgerald*, 108 Pa.Super. 290, 165 A. 52 (1933); *Langdon v. Strawhecker*, 46 D. & C.2d 764 (1969), and on the basis of those cases, we believe that the Pennsylvania courts would not allow a minor to disavow a release where she had received the benefits therefrom. In this case, Muckin has made no allegation that she did not receive the benefits of the release. Furthermore, we note that the terms of the settlement order of November 6, 1969 provided that Miss Muckin was to receive $663.12 (representing the balance of the insurance coverage after payment of medical expenses and attorney's fees), and that the release she signed acknowledged receipt of the $663.12. Consequently, it appears that Miss Muckin received the consideration for the settlement, and we therefore believe that under Pennsylvania law she may not disavow the release.[9]

tion was whether the party executing the release had surrendered his right to assert a *defense* in a subsequent action brought against him by the released party, and the court held that such a surrender could not be deemed to have been made unless the release expressly so provided.

8. Because we see no ambiguity in the release signed by Miss Muckin, we need not consider

her contention that doubtful language in the release must be construed against the maker thereof. We note, however, that defendant Volkswagenwerk was indisputably not the "maker" of this release.

9. The district court also took the position that Muckin was "estopped from disaffirming the release by the fact that it was made in conjunction with a court approved settlement."

## III

Accordingly, the district court order granting summary judgment against appellant Frank will be reversed,[10] but the order granting summary judgment against appellant Muckin will be affirmed.

In view of our disposition of her appeal, we need not consider this point. We note, however, that the release was signed eight days *after* the court issued its order approving the settlement, and that the Pennsylvania courts might take different approaches as between an attempted disavowal of a court-approved *set-tlement* and the attempted disavowal of a *release* executed subsequent to the settlement.

10. We of course express no opinion on the "crashworthiness" issue, which has not yet been considered by the district court.